

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-09-120-CR

KELLIE PARKER SUTTON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Kellie Parker Sutton appeals her conviction for unlawful possession of a firearm. In two issues, Sutton argues that the evidence is legally and factually insufficient to support her conviction and that the trial court erred by denying her motion for a directed verdict. We will affirm.

## II. BACKGROUND

At approximately 2:00 a.m. on November 19, 2008, several officers with the Fort Worth Police Department approached a house in search of a fugitive they thought was inside of the house. When one of the officers stopped next to a truck parked in front of the house, Sutton shouted from the house, "I have a gun[;] get your ass away from my truck or I'll shoot you." The officers identified themselves and walked up to the front porch. A short time later, Sutton opened the front door, told the officers that the house was hers, and gave them permission to search the house. Sutton sat on a bed located just inside of the front door as the officers conducted their search.[1]

Officers arrested Sutton after they discovered that she was wanted for several outstanding traffic violations. They searched the immediate area where she had been sitting during the search of the house for the fugitive and located a loaded pistol directly underneath the mattress where she had been seated.

At trial, Officer Ryan Stepp testified that an officer observed Sutton naked and without a weapon before she opened the front door to speak to the police officers. Stephen Minshew testified that he was the only person at the house that was not arrested on November 19, 2009, that the house belonged to an individual named "Dennis," and that five or six people stayed at the house. Minshew recalled that

---

[1] ... The officers located the fugitive hiding in a bathroom.

2

Sutton slept in the "living room," but he also testified that Sutton did not sleep in the bed next to the front door.

Sutton moved for a directed verdict on the ground that the State "ha[d] not proven possession," but the trial court denied the motion. A jury convicted Sutton of unlawful possession of a firearm, and the trial court sentenced her to four years' confinement.

### III. STANDARDS OF REVIEW

#### A. Legal Sufficiency

A challenge to the trial court's ruling on a motion for a directed verdict is, in actuality, a challenge to the legal sufficiency of the evidence to support the conviction. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990), *cert. denied*, 499 U.S. 954 (1991). In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and

credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### B. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204

4

S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation

5

of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

## IV. EVIDENTIARY CHALLENGES

In her first issue, Sutton argues that there is legally and factually insufficient evidence that she possessed the firearm found under the mattress where she sat during the officers' search of the house for the fugitive. She argues that "[u]sing the 'links' test, the evidence suggests that [she] did not intentionally and knowingly possess a firearm." In her second issue, Sutton argues that the trial court erred by denying her motion for a directed verdict.

### A. Unlawful Possession of a Firearm and Links

The State was required to prove beyond a reasonable doubt that Sutton, a felon, was in unlawful possession of a firearm. *See* Tex. Penal Code Ann. § 46.04(a)(1) (Vernon Supp. 2009). To establish the offense of unlawful possession of a firearm by a felon, the State must show that the defendant was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of the person's release from confinement. *Id.* Sutton does not dispute that she had a prior felony conviction. Instead, she challenges only the evidence that she possessed a firearm.

6

The penal code defines possession as "actual care, custody, control, or management." *Id.* § 1.07(a)(39) (Vernon Supp. 2009). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (Vernon 2003). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b).

If the firearm is not found on the defendant's person or is not seen in the defendant's exclusive care, custody, control, or management, as in this case, the State must offer additional, independent facts and circumstances that link the defendant to the firearm. *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *see Villarreal v. State*, Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL 671042, at *1 (Tex. App.—Fort Worth Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication) ("The . . . links doctrine also applies to the possession of firearms."). The purpose of linking the accused to the firearm is to protect innocent bystanders from conviction solely on their fortuitous proximity to the firearm. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Such links may be established by either direct or circumstantial evidence. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). An appellate court examines factors such as whether the firearm was in plain view, whether the defendant owned the premises where the firearm was found, whether the defendant made incriminating statements, whether the defendant was in close proximity to the

7

firearm and had ready access to it, whether the defendant attempted to flee, whether the defendant's conduct indicated a consciousness of guilt, whether the defendant had a special connection to the firearm, and whether the firearm was found in an enclosed space. *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd); *Westbrook v. State*, No. 02-07-00455-CR, 2008 WL 5672533, at *4 (Tex. App.—Fort Worth Feb. 26, 2009, pet. ref'd) (mem. op, not designated for publication). Significantly, it is the logical force of the factors, not the number of factors present, that determines whether the elements of the offense have been established. *See Smith*, 176 S.W.3d at 916.

### B. Legal Sufficiency Review

There are several facts that link Sutton to the firearm found under the mattress. First and foremost, Sutton made incriminating statements to the officers. She affirmatively declared, "*I have a gun*," and "[G]et your ass away from my truck or *I'll shoot you*." [Emphases added.] Sutton's statements that she had a gun and that she would shoot the person near her truck are highly probative, logically forceful links that she possessed a firearm for the simple reason that when she announced to the police, "I have a gun," *she admitted possessing a firearm*. Sutton's admissions essentially constitute an explicit recognition by her that she exercised actual care, custody, control, or management over a firearm. *See Rhodes v. State*, No. 12-01-00268-CR, 2003 WL 22240365, at *2 (Tex. App.—Tyler Sept. 30, 2003, no pet.) (mem. op., not designated for publication) (holding evidence legally

8

sufficient to support conviction for unlawful possession of a firearm when defendant testified that he owned, transported, and fired firearm); *Moore v. State*, No. 07-01-00477-CR, 2002 WL 31627079, at *1–2 (Tex. App.—Amarillo Nov. 22, 2002, pet. ref'd) (mem. op., not designated for publication) (concluding appeal was frivolous and mentioning that appellant admitted possessing firearm).

Another fact that links Sutton to the firearm is her admission of ownership or responsibility for the house in which the firearm was found.  Officer Brian Oglesby testified in part as follows:

> [State]:  What did she tell you about the house?
>
> [Officer Oglesby]:  We asked her if it was her residence, basically, just to establish some sort of residency. *She said that it was her house and she didn't have a problem with us checking.* [Emphasis added.]

As the State points out, the jury could have rationally inferred from Sutton's statement of ownership or responsibility over the house that she could exercise care, custody, and control over the house's contents, including the gun. *See Hughes v. State*, 612 S.W.2d 581, 583 (Tex. Crim. App. 1981) (stating that appellant's residency is a factor in determining if she exercised care, custody, or management).

Another fact that links Sutton to the firearm is the proximity of the mattress under which the gun was found to the front door of the house where Sutton yelled at the officers.  Officer Oglesby testified that Sutton was standing at the front doorway when she yelled at the officers.  After Sutton yelled at the officers, she closed the front door for a brief period before coming back to the door to speak with

9

the officers. Officer Stepp testified that the bed where the gun was found was located only "inches" away from the front door and that it would only take a few seconds for someone who was at the front door to place the gun underneath the mattress. According to Officer Oglesby, the grip of the gun was facing towards the outside edge of the mattress, and the gun was "readily grabbable." Considering the proximity of the mattress to the front door, the jury could rationally have inferred that Sutton exercised actual care, custody, or control over the gun before placing it under the mattress and after yelling at the officers that she had a gun. *See Gipson v. State*, Nos. 05-01-00770-CR, 05-01-00771-CR, 05-01-00772-CR, 05-01-00773-CR, 2003 WL 21053918, at *5 (Tex. App.—Dallas May 12, 2003, no pet.) (not designated for publication) (holding that evidence was sufficient to support conviction for unlawful possession of a firearm in part because pistol was conveniently accessible to appellant, who was seated on couch).

Another link, though less logically forceful than those already addressed, is the fact that the gun was found "directly beneath" where Sutton was sitting when the officers searched the house. Officer Oglesby testified that the officers asked Sutton to have a seat but did not tell her to sit on the bed. Also, Sutton was the only person at the front of the house—which is where officers found the gun—when the officers entered the house. The fugitive that the officers were searching for was hiding in a bathroom at the back of the house, and Minshew testified that he was sleeping in his bedroom at the back of the house.

10

Viewing all of the evidence in the light most favorable to the prosecution, giving full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, a rational jury could have found beyond a reasonable doubt that Sutton possessed the gun that officers discovered underneath the mattress that Sutton sat on during the officers' search of the house and that was located only "inches" away from the front door of the house where Sutton yelled to the officers, "I have a gun[;] get your ass away from my truck or I'll shoot you." *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Sutton's conviction. We overrule the part of Sutton's first issue challenging the legal sufficiency of the evidence and her second issue.

## C. Factual Sufficiency

Sutton argues that the evidence is insufficient to show that she possessed the gun because (1) Minshew testified that "Dennis" owned the house, (2) she followed the officers' commands to sit down on furniture that was nearest to the door, (3) the bed where the gun was found opened into one of the living rooms in the house and was where another individual was staying, and (4) an officer saw her naked and without a gun. We address Sutton's arguments relating to her being naked and without a gun first.

11

Officer Stepp is the only witness who testified about Sutton being naked and without a gun. He testified on direct examination as follows:

[State]: How did you get into the house?

[Officer Stepp]: We were waiting for the person that -- the female that yelled that comment to come to the door and talk with us. It took a few minutes and she opened the door.

[State]: Okay. When you say it took a few minutes, do you know why it took a few minutes?

[Officer Stepp]: I assumed she was putting clothes on. We had information over our earpieces that there was a female that was observed naked inside the residence and told us to hold on.

Officer Stepp testified on cross-examination as follows:

[Defense counsel]: Is it Officer Stepp?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Did you ever see my client in possession of that weapon?

[Officer Stepp]: No, sir.

[Defense counsel]: Okay. That's a no?

[Officer Stepp]: Yes, correct, sir. No, sir, I did not.

[Defense counsel]: Let me ask you this.

[Defense counsel]: May I approach that board, Your Honor?

THE COURT: Yes, sir.

[Defense counsel]: This bed right here, right here, the bed where the gun was found?

12

[Officer Stepp]: Yes, sir.

[Defense counsel]: How close is that to the front door?

[Officer Stepp]: Inches, inches away from the front door.

[Defense counsel]: If someone was at that front door with a weapon and then stuck it underneath the mattress, that would only take a couple of seconds, correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: I think it's your testimony that at some point my client closed the door while y'all were still outside before y'all entered the house, right?

[Officer Stepp]: Yes, sir.

[Defense counsel]: She was gone for a couple of minutes I think you said, correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Or I don't want to put words in your mouth. The door was closed for a couple of minutes and then she reappeared, correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Okay. I think you testified that someone said that my client was naked; is that correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Was that, I mean, was that one of the other officers?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Okay. So there was an officer that made a visual and saw that my client was naked?

13

[Officer Stepp]: Saw a female that was naked, yes.

[Defense counsel]: Saw a female that was naked?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Did that officer see a weapon at that point?

[Officer Stepp]: No, sir.

[Defense counsel]: So there was a female. And we know there was only one female in the house, correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Is it safe to assume that that female was my client?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Client at the door naked with no weapon?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Closes the door for a couple of minutes?

[Officer Stepp]: (Moving head up and down).

[Defense counsel]: I need you to answer.

[Officer Stepp]: Yes, sir. Yes, sir.

[Defense counsel]: And then she reappears with clothes on?

[Officer Stepp]: Yes, sir.

[Defense counsel]: Now, is it fair to say that in that amount of time she went to put clothes on?

[Officer Stepp]: Yes, sir.

14

[Defense counsel]: Okay. Certainly if she had a weapon, it would only take a couple of seconds, correct?

[Officer Stepp]: Yes, sir.

[Defense counsel]: *But we know she didn't have a weapon because she was naked?*

[Officer Stepp]: *No weapon was seen in her hands when she was seen naked.* [Emphases added.]

Sutton makes only two statements in her argument relevant to this evidence. She first states, "Neither officer could testify that they personally saw [Sutton] possess a firearm. In fact, Officer Stepp testified that when [Sutton] came to the door and yelled at the officers she was nude." The second statement that Sutton makes regarding her being naked is as follows: "Officer Stepp further testified that [Sutton] did not have a weapon in her possession when she was undressed." Following Sutton's logic, her argument appears to be that because she did not have a firearm when she was naked, and she was naked when she was at the front door and yelled at the officers, then she did not possess a firearm when she was at the front door and yelled at the officers. Sutton's argument emphasizes that no one actually saw her with a firearm in her hands. But whether the officers actually saw Sutton with a firearm is not conclusive of whether she "possessed" the firearm; that is, whether she had a firearm in her care, custody, control, or management. Rather, we must examine the record for additional, independent facts and circumstances that link Sutton to the firearm. Considering all of the evidence, including Sutton's

15

statements to the officers, her close proximity to where the firearm was ultimately found, and her admission of ownership or responsibility for the house, the jury was free to infer and conclude, as it obviously did, that Sutton had possession—that is, exercised actual care, custody, control, or management—of the firearm even though none of the officers actually saw her with a firearm in her hands. The evidence that Sutton said that the house was her residence and that she allowed the police officers to enter; that she said, "I have a gun"; that she sat down by her own choice on the mattress under which the gun was found; and that she was within inches of the mattress where the gun was found when she was at the front door and made the statement, "I have a gun," is not rendered factually insufficient as a result of Officer Stepp's testimony that no one saw Sutton with a firearm in her hands when she was seen naked. *See Westbrook v. State*, No. 02-07-00455-CR, 2008 WL 5672533, at *5 (Tex. App.—Fort Worth Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that the evidence was legally and factually sufficient to support conviction for unlawful possession of a firearm by a felon when officers discovered a firearm that was wrapped in a denim shirt that appellant was able to directly point out to the officers in a bedroom); *Ramos v. State*, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *7 (Tex. App.—Fort Worth Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that the evidence was legally and factually sufficient to support conviction for unlawful possession of a firearm when shotgun was found in master bedroom closet, which appellant shared with his wife);

16

*Smith v. State*, No. 12-06-00021-CR, 2007 WL 2178541, at *3 (Tex. App.—Tyler July 31, 2007, no pet) (mem. op, not designated for publication) (holding that the evidence was legally and factually sufficient to support conviction for unlawful possession of a firearm when pistol was found in plain view in linen closet next to bedroom where appellant slept).

Regarding the other bases for Sutton's factual sufficiency argument, as the trier of fact, the jury was free to disbelieve or give less weight to Minshew's testimony regarding who owned the house and who stayed where in the house. *See Lancon*, 253 S.W.3d at 706 (reaffirming that "an appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in the better position to judge"). Further, the evidence that supports the verdict is not rendered insufficient merely because Sutton presented conflicting evidence. *See Anderson v. State*, 701 S.W.2d 868, 872 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 870 (1986); *see also Steadman*, 280 S.W.3d at 247 (reasoning that evidence is always factually sufficient when it preponderates in favor of the conviction).

The dissent seems to contend that there is no evidence Sutton exercised actual care, custody, control, or management over the handgun because no one actually saw her with a gun in her hand. The dissent demands more than what the law requires. Contrary to the dissent's proposition, although it is undisputed that no

17

one saw Sutton with a gun in her hands, that does not end the possession inquiry. *See, e.g., James v. State*, 264 S.W.3d 215, 219–21 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (applying links analysis and holding that the evidence was legally and factually sufficient to support conviction for unlawful possession of a firearm even though no one saw appellant handle the gun). As we already explained, if the firearm is not found on the defendant's person or is not in the defendant's exclusive possession, as in this case, the State must offer additional, independent facts and circumstances that link the defendant to the firearm to demonstrate actual care, custody, control, or management of the firearm. *See Bates*, 155 S.W.3d at 216–17; *see also Evans*, 202 S.W.3d at 162 (stating that mere presence is insufficient to establish possession). The entire analysis above examines the numerous independent facts and circumstances that link Sutton to the firearm discovered by the police under the mattress: it is undisputed that Sutton was the only female in the house; that she was at the front door when she yelled, "I have a gun[;] get your ass away from my truck or I'll shoot you"; that the bed and mattress where the readily accessible gun was found were located only "inches" away from the front door; and that she was sitting on the mattress underneath which the gun was found.

Viewing all the evidence in a neutral light, favoring neither party, we conclude that the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust, nor does the conflicting evidence so greatly outweigh the evidence supporting the conviction that the jury's

18

determination is manifestly unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Sutton's conviction. We overrule the remainder of Sutton's first issue challenging the factual sufficiency of the evidence.

## V. CONCLUSION

Having overruled Sutton's two issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: August 19, 2010

19


## NO. 2-09-120-CR

KELLIE PARKER SUTTON                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I must respectfully dissent because I cannot follow the majority's analysis of a very clear record and because I believe that the majority has not addressed the questions fundamental to the disposition of this case.

Officer Stepp confirmed that another officer saw Appellant Kellie Parker Sutton "at the door naked with no weapon."

The majority characterizes the following as illogical: She did not possess a firearm when she was naked. She was naked when she was at the front door and yelled at the officers. Therefore, she did not possess a firearm when she was at the

front door and yelled at the officers.  Respectfully, the conclusion is logical.  If Appellant was seen naked at the front door, and no weapon was seen in her hands when she was naked, is the majority suggesting that the gun was someplace on her body?

The majority works too hard to complicate the record.  There is no testimony that anyone saw Appellant with a firearm on her person.  Taking the record as it is without rewriting it or skewing it, none of the police officers saw a firearm on Appellant's person, even when they saw her naked.  They did watch her stand in her doorway and yell, "I have a gun[;] get your ass away from my truck or I'll shoot you."

The issues the majority should address based on this uncomplicated record are:

(1)     If Appellant was the person yelling, would her knowledge that another person in the house had a gun in his bedroom be sufficient evidence that Appellant exercised care, custody, and control over that gun?

(2)     Does a threat to use a gun constitute the exercise of care, custody, and control over a firearm?

(3)     Is the threat evidence that Appellant knew that that specific firearm was located in a place to which she had access?

(4)     Is following police officers' orders to sit down in someone else's room by sitting on a bed where officers later found a firearm evidence that Appellant exercised care, custody, or control over that firearm or that she knew the firearm was located under the mattress when the firearm was not visible until officers searched under the mattress?

Because the majority fails to address the clear issues raised by the record, I respectfully dissent.

2

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  August 19, 2010