Affirmed and Memorandum Opinion filed May 3, 2011.

 

In The

 



Fourteenth
Court of Appeals

 



 

NO. 14-10-00072-CR



NO. 14-10-00073-CR

 



 

Victor M. Eldridge, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 248th District Court

Harris County,
Texas



Trial Court Cause Nos. 1219080 & 1219358

 



 

 

MEMORANDUM OPINION

A jury
found appellant Victor M. Eldridge guilty of possession of a controlled
substance and felon in possession of a firearm, for which the trial court
sentenced him to five and seven years’ imprisonment, respectively.  Eldridge
appeals on the grounds that the evidence is legally and factually insufficient
to support either conviction.  We affirm.  

I

            Victor
M. Eldridge was arrested in the course of Houston Police Department officers’
execution of a search warrant at a residence in northeast Houston on June 4,
2009.  Officers received information from a confidential informant that
residents were dealing drugs out of the house.  The informant agreed to
participate in a “controlled buy,” through which the informant was provided
money to buy drugs from the house in order to establish probable cause for a
search warrant.  The informant told officers he successfully purchased a small
amount of crack cocaine from a man he knew only as “T.”  

            As
officers converged on the house to execute the search warrant, the man they
believed to be T was spotted driving away from the house in a Suburban. 
Uniformed officers stopped the Suburban and arrested T while a raid team
continued to the house.  Eldridge was exiting the front door of the house as
the raid team approached.  Eldridge dropped a key ring he was holding, which
was later determined to include a front-door key to the house, before complying
with officers’ demands to get on the ground.  Officers proceeded into the house
while Eldridge was taken into custody.  The house was unoccupied, and officers
began a search.

            Upon
entering the house, officers discovered in the living room a “live feed”
surveillance monitor displaying the area in front of the house.  A search of
the living room produced a Mentos container containing 13.5 grams of crack
cocaine lodged inside a stereo.  In the kitchen cabinets, officers found a
plate with crack cocaine on it, a pipe with a push rod, a weight scale with
some residue on it, and three handguns, two of which were loaded.  A small
amount of marijuana was also recovered from a coat pocket.  Additionally, a
door in the kitchen leading to outside the house was barricaded from inside,
which Officer Brandon Bonds testified was a common feature in houses where
drugs were sold.  

Inside one of the
house’s two bedrooms, officers found a large quantity of pills in unlabeled
bottles, another weight scale, and 48 rounds of ammunition, some of which fit
one of the handguns from the kitchen.  The other bedroom was secured with a
padlock, a key to which was found in T’s possession.  Police recovered
marijuana and several individual baggies containing a white powdery substance appearing
to be cocaine.  At trial, the State called a pretrial-services interviewer, who
testified that through routine questions asked of defendants to determine
eligibility for pretrial release, Eldridge told the interviewer the house which
was raided by police was his residence and that he had lived there for six
months.   

II

A

Eldridge’s only
complaint on appeal is that the evidence against him is legally and factually
insufficient to support his conviction because a rational trier of fact could
not have found, beyond a reasonable doubt, that he possessed either the drugs
or the guns found in the house.  

A
majority of the judges on the Court of Criminal Appeals have determined that
the Jackson v. Virginia legal-sufficiency standard is the only standard
a reviewing court should apply in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt.  Brooks v. State, 323
S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by
Keller, P.J., Keasler, and Cochran, J.J.); id. at 926 (Cochran, J.,
concurring, joined by Womack, J.) (same conclusion as plurality). 
Accordingly, we will analyze Eldridge’s factual-sufficiency issue under the Jackson
v. Virginia standard and ask only if the evidence against him was legally
sufficient to sustain a verdict of guilty beyond a reasonable doubt.  See
id. at 912 (plurality op.); Pomier v. State, 326 S.W.3d 373, 378
(Tex. App.—Houston [14th Dist.] 2010, no pet.). 

In a legal-sufficiency
review, we examine all of the evidence in the light most favorable to the
verdict to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 433 U.S. 307, 319 (1979).  This standard of review applies to
cases involving both direct and circumstantial evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Although we consider everything
presented at trial, we do not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).    

A person unlawfully
possesses a firearm any time he possesses one before the fifth anniversary of
his release from confinement following a felony conviction.[1]  See Tex.
Penal Code § 46.04(a))(1).  A person also commits an offense if he knowingly or
intentionally possesses a controlled substance.  See Tex. Health &
Safety Code § 481.115(a).  Cocaine is a controlled substance.  See id. §
481.102(3)(D).  “Possession” means “actual care, custody, control or
management.”  Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App.
2006); see also Tex. Health & Safety Code § 481.002; Tex. Penal Code
§ 1.07(39).  To prove unlawful possession of a controlled substance, the State
must establish that the accused (1) exercised care, control, or management over
the contraband, and (2) knew the substance was contraband.  Poindexter v.
State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  A person’s possession
of the controlled substance must be more than fortuitous, and his mere presence
at the scene where the substance was found is insufficient to demonstrate care,
management, or control of the drug.  Evans, 202 S.W.3d at 161–62.  But
presence combined with direct or circumstantial evidence affirmatively linking
the defendant to the controlled substance may be sufficient to establish the
element of possession beyond a reasonable doubt.  Id. at 162; see
Olivarez v. State, 171 S.W.3d 283, 291–92 (Tex. App.—Houston [14th Dist.]
2005, no pet.).

            Courts
have identified a non-exhaustive list of factors that may help show an accused
is linked to a controlled substance or illegal firearms, including (1) the
defendant’s presence when a search is conducted; (2) whether the contraband was
in plain view; (3) the defendant’s proximity to and the accessibility of the
contraband; (4) whether the defendant was under the influence of narcotics when
arrested; (5) whether the defendant possessed other contraband or narcotics
when arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of contraband;
(10) whether other contraband or drug paraphernalia were present; (11) whether
the defendant owned or had the right to possess the place where the contraband
was found; (12) whether the place where the drugs were found was enclosed; (13)
whether the defendant was found with a large amount of cash; and (14) whether
the conduct of the defendant indicated a consciousness of guilt.[2]  See, e.g.,
Evans, 202 S.W.3d at 162 n.12; Olivarez, 171 S.W.3d at 291.  It is
not the number of links that is dispositive, but rather the logical force of
all of the evidence, direct and circumstantial.  Evans, 202 S.W.3d at
162.  

B

            Eldridge
argues the only affirmative links between him and the contraband in the house
are the front-door key in his possession upon arrest and his admission that he
had been living there for six months.  Standing alone, these links are
insufficient, Eldridge maintains, to establish care, custody, and control of
the contraband.[3] 
Eldridge argues a portion of the drugs were recovered from a locked room, which
Eldridge “definitely” could not access, and the remaining drugs and guns were
not in plain view, which could give rise to nothing more than “mere suspicion”
that the contraband belonged to Eldridge.  See Grant v. State, 989
S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (“While
affirmative links may be proved by circumstantial evidence, proof amounting to
a strong suspicion or even a probability will not suffice.”)    

            The
Evans factors take into account “whether the defendant owned or had the
right to possess the place where the contraband was found,” and the jury was
entitled to give weight to both Eldridge’s possession of a front-door key and
his admission that the house was his residence and had been for the past six
months.  See Evans, 202 S.W.3d at 162 n.12.  But we disagree that this
was the only evidence linking Eldridge to the contraband.  Although much of the
additional evidence presented against Eldridge was circumstantial, such
evidence can prove that an accused’s connection to contraband is “more than
just fortuitous.”  See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995); see also Grant, 989 S.W.2d at 433. 

Eldridge emphasizes that
much of the narcotics and weapons were not in plain view.  The second Evans factor
takes into account whether the contraband was in plain view, but this
consideration is balanced by the third factor, which considers the
proximity and accessibility of the contraband.  In this case, drugs, guns, and
drug paraphernalia were readily found inside the cabinets in the kitchen, a
common area of the house.  Based on Eldridge’s own admission that he had lived
in the home for six months, a reasonable jury could infer that Eldridge knew about
and possessed the contraband spread throughout a commonly used household
storage space such as kitchen cabinets.   

A significant quantity
of crack cocaine was also found in the living room, another common area.  Although
the Mentos container was concealed within a stereo, a jury could have
rationally concluded, based in part on Eldridge’s possession of a front-door
key and his own statement that he lived at the house for six months, that he
had care, control, or management over the drugs in the living room.  This
conclusion was bolstered by Officer Bonds’s testimony that a barricaded
exterior door in the kitchen and a surveillance system are common features in
houses from which drugs are dealt.  Officer Bonds also testified it is common
for drug dealers not to have any personal effects in a house where they conduct
drug deals in order to avoid linking themselves to their illegal activities.  A
jury could have rationally concluded these conditions indicated a consciousness
of guilt, an additional Evans factor, and also could have considered
this evidence in concluding Eldridge knew about the contraband in the home and
exercised care, control or management over it.  See Evans, 202 S.W.3d at
162 n.12; Poindexter, 153 S.W.3d at 405. 

Furthermore, considering
the logical force of the circumstantial evidence throughout the house that drug
dealing occurred on the premises, a jury could have rationally concluded that Eldridge
also exercised care, control, or management over the contraband in the locked
bedroom.  See Evans, 202 S.W.3d at 166.  Although Eldridge did not have
a key to the padlocked room on his person, and officers gained access to the
room only after seizing a key from T, the pervasiveness of drugs, guns,
ammunition, and drug paraphernalia throughout the living room, kitchen, and the
only other bedroom in the house could give rise to a rational inference that Eldridge
at times did use the room as part of the drug-dealing enterprise that operated
from within the house.  But even if the jury did conclude that the locked
bedroom was solely controlled by T, it could have rationally concluded that the
other bedroom, which contained unlabeled pills, drug paraphernalia and
ammunition matching a handgun in the kitchen, belonged to Eldridge.[4]  Accordingly, the
jury could have rationally viewed the presence of unlabeled pills, ammunition
and drug paraphernalia in Eldridge’s bedroom as evidence that he was connected
to and had ownership of the contraband spread throughout common areas of the
house.  

While Eldridge’s appeal
was pending before this court, the Court of Criminal Appeals reversed the First
Court of Appeals in Blackman v. State, a case Eldridge cites for the
proposition that “[p]roof amounting only to a strong suspicion or mere probability
will not suffice” to affirmatively link a defendant to contraband.  In Blackman,
the First Court of Appeals determined the evidence was insufficient to convict a
passenger of a rented van whose three occupants had traveled from Florida to
Pasadena to purchase three kilograms of cocaine.  No. 01-08-00138-CR, 2009 WL
5064763, at *10–11 (Tex. App.—Houston [1st Dist.] Dec. 22, 2009), rev’d,
PD-0109-10, 2011 WL 1376732 (Tex. Crim. App. Apr. 13, 2011).  In reversing, the
Court of Criminal Appeals noted testimony about characteristic behavior and
circumstantial evidence common in long-distance drug trafficking, and held a
jury rationally could have determined the passengers “traveled hundreds of
miles together for the common purpose of purchasing three kilograms of
cocaine.”  Blackman, 2011 WL 1376732.  We find this analysis instructive
here, where officers testified that features of the home such as a barricaded
door, surveillance equipment, and a dearth of personal effects, were
characteristic of houses primarily used to deal drugs, and were additional
“affirmative links” to the contraband.  And similar to the Court of Criminal
Appeals in Blackman, we hold this evidence enabled a rational jury to
conclude that Eldridge’s proximity to the contraband was more than just a
fortuitous accident.  See id.  

We conclude that the
circumstantial evidence, when viewed in combination and its sum total,
constituted amply sufficient evidence connecting appellant to the actual care,
custody, control or management of the cocaine in front of him.  Although
evidence touching all of the Evans factors was not present in this case,
we have previously noted that “[t]he number of factors present is not as
important as the significance of those factors in establishing the elements of the
crime.”  Reed v. State, 158 S.W.3d 44, 47 (Tex. App.—Houston [14th
Dist.] 2005, pet. ref’d).  The Evans court itself similarly noted that
“[i]t is the logical force of the circumstantial evidence, not the number of
links, that supports a jury's verdict.”  Evans, 202 S.W.3d at 166.  A
rational trier of fact could have found the essential elements of both the
offenses of possession of a controlled substance and felon in possession of a
weapon beyond a reasonable doubt.  See Jackson, 433 U.S. at 319.  

* * *

For the
foregoing reasons, we affirm the trial court’s judgments.  

 

                                                                                    

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison

Do
Not Publish — Tex. R. App. P. 47.2(b).        









[1] Eldridge pleaded “true”
to an enhancement paragraph related to a felony theft conviction, for which a
judgment was entered on June 5, 2008.  





[2] Although Evans
addressed “affirmative links” between a defendant and a controlled substance,
other courts have held the Evans factors applicable when appellants
challenge the sufficiency of the evidence as to possession of a firearm.  See,
e.g., Sutton v. State, 328 S.W.3d 73, 76–77 (Tex. App.—Fort Worth
2010, no pet.); Williams v. State, 313 S.W.3d 393, 397–98 (Tex.
App.—Houston [1st Dist.] 2009, pet. ref’d); Bates v. State, 155 S.W.3d
212, 216–17 (Tex. App.—Dallas 2004, no pet.).  





[3] Eldridge also complains
there is no “temporal link” between Eldridge and the contraband, citing Scillitani
v. State, 297 S.W.3d 498 (Tex. App.—Houston [14th Dist.] 2009, pet.
granted), vacated by 315 S.W.3d 542 (per curiam).  Scillitani is
a driving-while-intoxicated case concerning a “temporal link” between the
defendant’s driving and intoxication.  See Scillitani, 297 S.W.3d at 501. 
We decline to apply the analysis used in Scillitani because it was
uniquely tailored to DWI cases.  Additionally, the Court of Criminal Appeals
vacated the judgment in Scillitani to allow this court to consider its
judgment in light of an opinion issued shortly after Scillitani in which
the Court of Criminal Appeals held the evidence was legally sufficient under
similar facts.  See 315 S.W.3d at 542.  

 





[4] The trial court allowed
testimony concerning the unlabeled pills over defense counsel’s objection.  The
State conceded at trial that the pills had not been tested to determine what
they were or whether they were illegal.  Eldridge, however, does not complain on
appeal of the trial court’s ruling regarding the admissibility of the unlabeled
pills.