02-10-083-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00083-CR

 

 


 
 
 Kerwin Durvin Nero
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 372nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          The
trial court convicted Appellant Kerwin Durvin Nero of unlawful possession of a
firearm and sentenced him to eight years’ confinement.  In four points, Nero,
pro se, argues that the evidence is legally and factually insufficient to
support his conviction, that the trial court erred by failing to suppress
evidence, and that his trial counsel was ineffective.  We will affirm.

II.  Background

          On
February 23, 2009, Officer Nicholas Maddock responded to a call about a person
with a weapon.  Several witnesses informed Officer Maddock that Nero was
involved in the alleged altercation, and they provided a description of his
vehicle.  Officer Maddock broadcast a description of the vehicle, and Officer Caleb
Ferren located Nero driving his vehicle and initiated a stop.  Officer Ferren ordered
Nero out of the vehicle, performed a “quick pat-down for weapons,” and
discovered a holster located on the inside of Nero’s waistband.  Officer Ferren
removed the holster and asked Nero where the gun was located.  Nero responded
that he did not have a gun.

          Meanwhile,
Officer Michael Williams had arrived at the scene and ordered Nero’s mother, Jacqueline,
out of the passenger side of Nero’s vehicle.  Officer Williams observed a purse
lying in plain view and “wide open” on the passenger-side floorboard and a 9 mm
semi-automatic handgun inside of the purse.  He retrieved the loaded gun. 
Officer Ferren asked Nero if the gun belonged to him, and Nero responded that
“he didn’t have it on him” but also acknowledged that “he had it on him earlier
in the day” at his house.  Jacqueline denied owning the gun and said that she
knew nothing about it.  Regarding the original call, officers “decided the
elements of an aggravated assault were not present,” but Nero was arrested and
later indicted for unlawfully possessing the firearm.

III.  Sufficiency
of the Evidence

          In
his first point, Nero argues that the evidence is legally and factually
insufficient to support his conviction because he was not the sole occupant of
his vehicle, the gun was not registered to him, and his fingerprints were not
found on the gun.  In his second point, Nero argues that “[t]he State failed to
prove each and every element in the indictment,” particularly, the possession
element.  We will address Nero’s evidentiary challenges together.

          The
court of criminal appeals has held that there is no meaningful distinction
between the legal sufficiency standard and the factual sufficiency standard.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis
v. State, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).  The Jackson
standard is the “only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt.” 
Id.

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to
the responsibility of the trier of fact to resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  Thus, when performing an evidentiary sufficiency review, we
may not re-evaluate the weight and credibility of the evidence and substitute
our judgment for that of the factfinder.  Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

          To
establish the offense of unlawful possession of a firearm, as pleaded, the
State was required to show that Nero was previously convicted of a felony
offense and that he intentionally or knowingly possessed a firearm after the
conviction and before the fifth anniversary of his release from confinement.  See
Tex. Penal Code Ann. § 46.04(a)(1) (West Supp. 2011).  Nero does not
dispute the prior felony conviction.  Instead, he challenges the possession
element of the offense.

          “Possession”
is defined as “actual care, custody, control, or management.”  Id. § 1.07(a)(39)
(West 2011).  A person commits a possession offense only if he voluntarily
possesses the prohibited item.  Id. § 6.01(a) (West 2011). 
Possession is voluntary if the possessor knowingly obtains or receives the
thing possessed or is aware of his control of the thing for a sufficient time
to permit him to terminate his control.  Id. § 6.01(b).

          If
the firearm is not found on the accused’s person or is not in the exclusive
possession of the accused, the evidence must link the accused to the firearm.  Sutton
v. State, 328 S.W.3d 73, 76 (Tex. App.—Fort Worth 2010, no pet.); Bates
v. State, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.).  The
purpose of linking the accused to the firearm, whether by direct or
circumstantial evidence, is to protect innocent bystanders from conviction based
solely on their fortuitous proximity to the firearm.  See Poindexter v.
State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Villarreal v. State,
Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL 671042, at *1 (Tex. App.—Fort
Worth Mar. 12, 2009, pet. ref’d) (mem. op., not designated for
publication) (stating that the links doctrine also applies to possession of
firearms).  Factors that may link the accused to the firearm include whether
the firearm was in plain view, whether the accused was the owner of the vehicle
in which the firearm was found, whether the accused was the driver of the vehicle
in which the firearm was found, whether the accused was in close proximity and
had ready access to the firearm, whether the place where the firearm was found
was enclosed, and whether affirmative statements connect the accused to the firearm,
including incriminating statements made by the accused when arrested.  Sutton,
328 S.W.3d at 77; Bates, 155 S.W.3d at 216–17.  It is not the number of
factors that determines whether the elements of the offense have been
established but the logical force of the factors.  Sutton, 328 S.W.3d at
77.

          The
record contains ample evidence linking Nero to the firearm discovered in
Jacqueline’s purse.  Specifically, Officer Maddock responded to a
person-with-a-weapon call, and witnesses initially implicated Nero in the
alleged confrontation.  When Officer Ferren searched Nero, he discovered a
holster attached to Nero’s waistband.  Nero claimed that he owned the holster,
and Officer Ferren testified that the handgun fit “perfectly” inside of the
holster.  Officer Williams discovered the loaded handgun not only in Nero’s vehicle,
but in Jacqueline’s purse, which was “wide open,” located on the passenger-side
floorboard, and within the reach of the driver, Nero.  When Officer Ferren
asked Nero if the handgun belonged to him, Nero acknowledged that “he had it on
him earlier in the day” at his house.

          Jacqueline
testified that Nero drove her to a house on February 23, 2009, to visit
Nero’s children—her grandchildren; that she left her purse in Nero’s vehicle
during the fifteen- to twenty-minute visit; that there was an altercation at
that location; that she did not bring a handgun in her purse that day; and, in
fact, that she does not even own a handgun.  Jacqueline confirmed that her
purse was not zipped when she returned to Nero’s vehicle after visiting her
grandchildren, that she did not check her purse between the time that she left
the house where she visited her grandchildren and the time that the police
stopped Nero’s vehicle, that she told one of the officers that there was no handgun
in her purse when she arrived at the house, and that the first time she learned
of any handgun at all was when Officer Williams discovered it in her purse.

          Nero
is correct that he was not the sole occupant of his vehicle and that his
fingerprints were not found on the handgun, but that does not end our
possession inquiry.  Viewing the evidence in the light most favorable to the verdict,
and giving full play to the responsibility of the trial court to weigh the
evidence and to draw reasonable inferences from basic facts to ultimate facts,
the trial court could have found beyond a reasonable doubt that Nero
intentionally or knowingly exercised actual care, custody, control, or
management of the handgun that authorities discovered in Jacqueline’s purse in
Nero’s vehicle.  Accordingly, we hold that the evidence is sufficient to
support Nero’s conviction for unlawful possession of a firearm.  We overrule
Nero’s first and second points.

IV.  Motion
to Suppress

          In
his third point, Nero appears to argue that because police unlawfully frisked
or arrested him, the trial court erred by denying his motion to suppress the
handgun discovered in his vehicle.

          To
preserve error about the illegal seizure of evidence, a defendant must either
file a motion to suppress and obtain a ruling on the motion or timely object
when the State offers the evidence at trial.  See Tex. R. App. P.
33.1(a); Tex. R. Evid. 103(a)(1); Roberts v. State, 545 S.W.2d 157, 158
(Tex. Crim. App. 1977); Ratliff v. State, 320 S.W.3d 857, 860 (Tex.
App.—Fort Worth 2010, pet. ref’d).

          In
this case, Nero neither filed a motion to suppress any evidence nor asserted an
objection when the State offered the handgun into evidence.  Consequently, Nero
failed to preserve this point for appellate review.  We overrule Nero’s third
point.

V.  Ineffective Assistance

          In
his fourth point, Nero argues that his trial counsel rendered ineffective
assistance because he failed to investigate “nonstatutory mitigating evidence,”
failed to properly object to certain evidence, failed to call a witness, and
failed to present mitigating evidence at the punishment phase.

          To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim.
App. 1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct.
at 2065.  Review of counsel’s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel’s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

          This
case demonstrates the “inadequacies inherent in evaluating ineffective
assistance claims on direct appeal.”  See Patterson v. State, 46 S.W.3d
294, 306 (Tex. App.—Fort Worth 2001, no pet.).  Nero filed a motion for new
trial, but he did not specifically argue that his trial counsel was
ineffective, and there is no record of a hearing at which any alleged ineffectiveness
was explored.  The record does not reflect trial counsel’s reasons for doing or
not doing the things of which Nero complains, and we will not speculate about
trial counsel’s complained-of acts or omissions.  Further, we cannot conclude
that this is one of those rare cases in which the challenged conduct was “so
outrageous that no competent attorney would have engaged in it.”  See
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied,
537 U.S. 1195 (2003)).  Accordingly, based on this record, and in light of the strong
presumption of reasonable professional assistance by defense counsel, we cannot
conclude that Nero met his burden of showing by a preponderance of the evidence
that his trial counsel’s representation fell below the standard of prevailing
professional norms.  See Strickland, 466 U.S. at 687–88, 104 S. Ct.
at 2064–65; Salinas, 163 S.W.3d at 740; Mallett, 65 S.W.3d at 62–63. 
We overrule Nero’s fourth point.

VI.  Conclusion

          Having
overruled all four of Nero’s points, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 10, 2011









[1]See Tex. R. App. P. 47.4.