

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00681-CR

Demoria **HARRIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR3824
Honorable Melisa Skinner, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:         Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:   July 26, 2017

REVERSED AND RENDERED

A jury convicted appellant Demoria Harris of unlawful possession of a firearm by a felon. After the trial court found an enhancement paragraph true, it sentenced Harris to fifteen years' confinement. On appeal, Harris contends the evidence is legally insufficient to prove the offense. Because we hold the evidence is legally insufficient to prove Harris possessed the firearm, we reverse the trial court's judgment and render a judgment of acquittal.

**BACKGROUND**

Officer Jose Rafael Davila, a police officer with the Castle Hills Police Department, pulled over THE driver of a vehicle in the early morning hours for "failure to stop at a designated point," which is a traffic violation. The officer explained to the driver the vehicle was illegally stopped in the crosswalk at a red light on the frontage road of Loop 410 and Blanco. According to the officer, the driver should have stopped the vehicle behind the designated crosswalk.

After pulling over the vehicle, Officer Davila spoke to the driver. At that time, the officer stated he "detected an odor of marijuana coming out of the car." He contacted dispatch for additional officers as "cover." After the cover officers arrived, Officer Davila explained to the driver, who had been asked to step out of the vehicle, that based on the smell of marijuana he had probable cause to search the vehicle. According to Officer Davila, the driver was "calm, collected."

Officer Davila then spoke to Harris, who was the passenger in the vehicle and still seated therein, and advised him the vehicle was going to be searched. Harris was asked to step out of the vehicle and both Harris and the driver were handcuffed and placed in front of Officer Davila's patrol car. Officer Davila then searched the vehicle.

Officer Davila testified that during the search he found either a "duffle bag or a backpack" on the passenger side of the vehicle and the bag contained a loaded handgun — a .40 caliber Glock 22 pistol with a drum. Officer Davila also found a handgun under the driver's seat. The officer testified he also discovered "shake" on the floorboard of the vehicle. He described "shake" as "bits and pieces of marijuana," like you would see if you "crumbled" a cigarette.

After checking Harris's background and learning about his prior felony conviction, Officer Davila arrested Harris for the offense of felon in possession of a firearm. A jury convicted Harris

of the charged offense and after finding an enhancement paragraph true, the trial court sentenced him to fifteen years' confinement. Harris then perfected this appeal.

## ANALYSIS

As previously noted, Harris was charged with unlawful possession of a firearm by a felon. Harris does not dispute he is a felon or that the alleged firearm possession occurred before the fifth anniversary of his release from confinement or supervision. Rather, in his sole appellate issue, Harris contends the evidence is legally insufficient to prove he intentionally or knowingly possessed a firearm.

### *Standard of Review*

In determining whether the evidence is legally sufficient to support a conviction, the reviewing court must consider "the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Huff v. State*, 467 S.W.3d 11, 19 (Tex. App.—San Antonio 2015, pet. ref'd). In a sufficiency review, direct evidence and circumstantial evidence are equally probative. *Tate*, 500 S.W.3d at 413 (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)). Circumstantial evidence alone may be sufficient to uphold a conviction as long as the cumulative force of such evidence is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809–10 (Tex. Crim. App. 2015) (citing *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and we may not substitute our judgment for that of the jury. *Huff*, 467 S.W.3d at 19–20 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). As the sole judge of

a witness's credibility and the weight to be given such testimony, the jury may choose to believe all, none, or any part of a witness's testimony, even if such testimony is contradicted. *Rivera v. State*, 507 S.W.3d 844, 853–54 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *Dossett v. State*, 216 S.W.3d 7, 31 (Tex. App.—San Antonio 2006, pet. ref'd) (same). Moreover, juries are entitled to draw multiple reasonable inferences from the facts as long as the evidence supports each inference. *Tate*, 500 S.W.3d at 413 (citing *Jackson*, 443 U.S. at 319); *see Hooper*, 214 S.W.3d at 16–17. However, a jury may not draw conclusions based on pure speculation. *Tate*, 500 S.W.3d at 413 (citing *Hooper*, 214 S.W.3d at 16). Speculation, unlike a reasonable inference, is not sufficiently based on the evidence to support a finding beyond a reasonable doubt. *Id.* "When the record supports conflicting inferences, we must presume the jury resolved the conflicts in favor of the verdict." *Id.* (citing *Jackson*, 443 U.S. at 326). This presumption includes inferences from circumstantial evidence. *Huff*, 467 S.W.3d at 19.

### *Applicable Law*

To establish unlawful possession of a firearm by a felon, the State must prove the defendant: (1) was previously convicted of a felony offense; and (2) possessed a firearm after conviction and before the fifth anniversary of his release from confinement or supervision, whichever is later. TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011); *Williams v. State*, 313 S.W.3d 393, 397–98 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The Penal Code defines "possession" as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2016). A defendant commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (West 2011). Possession is voluntary if the possessor knowingly obtains or receives the item possessed or is aware of his control of the item for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b). If the firearm is not found on

the defendant or is not in his exclusive possession, as in this case, the State must produce evidence affirmatively linking him to the firearm.[1] *See Sutton v. State*, 328 S.W.3d 73, 76–77 (Tex. App.—Fort Worth 2010, no pet.); *Williams v. State*, 313 S.W.3d 393, 397–98 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Tate*, 500 S.W.3d at 413–14 (discussing affirmative links requirement in context of possession of controlled substance); *Hargrove v. State*, 211 S.W.3d 379, 385 (Tex. App.—San Antonio 2006, pet. ref'd) (same). The purpose of linking the defendant to the firearm is to protect innocent bystanders from conviction based solely "on their fortuitous proximity to the firearm." *Sutton*, 328 S.W.3d at 77 (citing *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006)); *see Williams*, 313 S.W.3d at 397; *see also Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (holding that "affirmative links rule" is designed to protect innocent bystander from conviction based solely on fortuitous proximity to another's narcotics). Thus, proximity alone is insufficient to establish possession, i.e., affirmatively link the defendant to the item allegedly possessed. *Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405 n.11 (citing *United States v. Phillips*, 496 S.W.3d 1395, 1397 (5th Cir. 1974)); *Allen v. State*, 249 S.W.3d 680, 695 (Tex. App.—Austin 2008, no pet.).

With regard to linking a defendant to a firearm found in a vehicle, the appellate courts have delineated a set of non-exclusive factors a reviewing court may consider when deciding whether there is sufficient evidence linking a defendant to a firearm found in a vehicle for purposes of establishing possession. *E.g.*, *Sutton*, 328 S.W.3d at 77; *Williams*, 313 S.W.3d at 397–98 (citing *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Bates*, 155

---

[1] In cases involving unlawful possession of a firearm by a felon, courts analyze the sufficiency of the evidence under the same rules adopted for unlawful possession of a controlled substance. *E.g.*, *Coleman v. State*, 188 S.W.3d 708, 720 (Tex. App.—Tyler 2005, pet. ref'd) (citing *Corpus v. State*, 30 S.W.3d 35, 37 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)); *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.) (citing *Young v. State*, 752 S.W.2d 137, 140 (Tex. App.—Dallas 1988, pet. ref'd)); *Gill v. State*, 57 S.W.3d 540, 545 (Tex. App.—Waco 2001, no pet.).

S.W.3d at 216); *cf. Tate*, 500 S.W.3d at 414 (setting out factors in context of narcotics); *Evans*, 202 S.W.3d at 162 n.12 (same). The factors include whether: (1) the firearm was in plain view; (2) the defendant was the owner of the vehicle in which the firearm was found; (3) the defendant was in close proximity and had ready access to the firearm; (4) the firearm was found on the same side of the vehicle as the defendant; (5) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (6) the defendant had a special connection or relationship to the firearm; (7) the place where the firearm was found was enclosed; (8) occupants of the vehicle gave conflicting statements about relevant matters; (9) the defendant was the driver of the vehicle in which the firearm was found; (10) other contraband was found on the defendant; (11) the defendant attempted to flee; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *Williams*, 313 S.W.3d at 397–98 (citing *James*, 264 S.W.3d at 219); *see Bates*, 155 S.W.3d at 216–17; *cf. Tate*, 500 S.W.3d at 414 (setting out factors in context of narcotics); *Evans*, 202 S.W.3d at 162 n.12 (same). The court of criminal appeals has recognized — as have the mid-level appellate courts — that it is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct or circumstantial. *Evans*, 202 S.W.3d at 162; *Sutton*, 328 S.W.3d at 77; *Williams*, 313 S.W.3d at 398. Moreover, the absence of certain links is not evidence of innocence to be weighed against the links present. *Williams*, 313 S.W.3d at 398 (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James*, 264 S.W.3d at 219).

### *The Evidence*

The State called three witnesses: (1) Manuel Alvarez, a fingerprint examiner and custodian of records for the Bexar County Sheriff's Office; (2) Officer Jose Rafael Davila, the officer who stopped the vehicle and arrested Harris; and (3) David Pendleton, a firearms examiner from the Bexar County Criminal Investigation Laboratory. Mr. Alvarez provided testimony establishing

Harris had been convicted in 2014 of "RETALIATION (REPEATER)" and sentenced to three years' confinement. By this testimony and the exhibits related thereto, the State established Harris had been previously convicted of a felony and based on his sentence, it had been less than five years since he was released at the time he was arrested on the charge of felon in possession of a firearm. Harris did not contest these elements of the offense at trial, nor does he challenge on appeal the sufficiency of the evidence to support these elements.

The State's next witness, Officer Davila, was the officer who stopped the vehicle in which Harris was a passenger. As set out above, Officer Davila testified about the odor of marijuana emanating from the vehicle, prompting him to conduct a search of the vehicle. During the search, the officer found two handguns, one under the driver's seat and one in a closed green bag on the floorboard of the passenger seat where Harris had been sitting. The officer stated he could not recall details about the bag other than its general size, which he said was similar to defense counsel's briefcase, and its dark green color. Officer Davila did not log the bag into evidence, and the State did not attempt to admit it into evidence.

Officer Davila also related the events of that morning in conjunction with the video from his patrol car's dash camera. The dash camera video shows the traffic violation, the stop, and the events thereafter. The video shows that after the stop, Officer Davila approached the vehicle and could see there were two people inside. The officer stated he could see a green bag between Harris's feet, closer to the passenger seat. He could not recall what the bag looked like and at that time, did not know what was in the bag. However, he admitted there was nothing in the bag linking Harris to the gun, e.g., identification, etc. Officer Davila stated he never submitted the gun found inside the green bag for fingerprints, but stated the gun was submitted to the laboratory. Officer Davila testified he had "no idea" whether Harris owned the gun, but he did learn the gun had not been reported stolen.

The officer identified the gun as a .40 caliber Glock 22. According to Officer Davila, the gun was loaded and there was a round in the chamber. Attached to the ammunition magazine inside the Glock was a "large drum," which the officer stated holds a "large capacity of bullets or ammunition in it." When asked about the exact location of the Glock .22, Officer Davila testified the bag containing the gun was on the floorboard, "closer to the passenger seat" than the dashboard, in between Harris's feet.

Officer Davila then spoke to the driver, who claimed the vehicle belonged to him, stating he bought it "several weeks or days ago." Officer Davila testified Harris was not the registered owner of the vehicle and neither was the driver. The officer took the driver's information and returned to his patrol car, leaving the driver and Harris sitting inside the vehicle. During this time, and while both the driver and Harris were still in the vehicle, Officer Davila admitted he never saw Harris make any suspicious or sudden movements. The officer did not see anything to make him think Harris was trying to hide something.

After removing the driver from the vehicle, handcuffing him, and placing him in front of the patrol car, Officer Davila approached Harris and asked for his identification. Although Harris did not have a driver's license or other form of identification, he provided his full, correct name and date of birth. Officer Davila testified Harris was "very" cooperative and his demeanor was calm — Harris was not fidgeting, shaking, or sweating. Harris never attempted to flee and he exhibited no signs that he was nervous.

The video shows that after removing both men from vehicle and handcuffing them, Officer Davila placed them in front of his patrol car in view of the dash camera. As the officer searches the car, he advises the men and the cover officers that he has found "shake" in the vehicle. The driver responds, "Really?"; Harris remains silent. When Officer Davila discovers the weapons, he turns to the men and asks, "Why y'all rollin' with so much heat, man?" Neither the driver nor

Harris verbally responds, but Harris shakes his head back and forth. The officer then asks, "Nothing?" Harris again shakes his head back and forth again. The men were placed in the back of separate patrol cars. After Officer Davila read Harris his rights, he asked Harris, "Is that gun under your name?" Harris's response is inaudible. Officer Davila immediately says, "the Glock, no," and then asks, "it's not hot?" Again, Harris's response is inaudible, but the officer then states, "not that you know of, 'k.'" Harris never claimed ownership of the green bag or either weapon.

The State's final witness was David Pendleton. Mr. Pendleton first testified about his training and experience as a firearms examiner. Thereafter, he was asked about the firearm found in the green bag. Mr. Pendleton stated he identified the make, model, serial number, and caliber of the firearm. He also tested it for functionality, ensuring the gun and its safety mechanisms were operating properly. He then test-fired the gun using the drum, which he stated was capable of holding fifty rounds of ammunition. Mr. Pendleton determined the Glock "was in working order."

### *Application*

As set out above, Harris contends the evidence is legally insufficient to establish he knowingly possessed the firearm. In response, the State argues that "[v]iewing the evidence in a light most favorable to the verdict, the jury's conclusion that [Harris] possessed a firearm was rational[]" because "the placement of the firearm, the type of firearm, the smell and presence of marijuana, his companion's possession of a firearm, [Harris's] criminal history, and [Harris's] demeanor were all indications that the firearm was in his knowing possession." We disagree because the evidence relied on by the State — other than the location of the firearm — was not the type of evidence relied on by courts to affirmatively link a defendant to a firearm or was nothing more than speculation from which a jury could not make a rational inference of possession.

In this case, the firearm was not found on Harris nor was it in his exclusive possession. Thus, to establish Harris's guilt the State had to produce evidence affirmatively linking him to the

firearm. *See Sutton*, 328 S.W.3d at 76–77); *Williams*, 313 S.W.3d at 397–98; *see also Tate*, 500 S.W.3d at 413–14; *Hargrove*, 211 S.W.3d at 385. It was not sufficient that the firearm was found in close proximity to Harris, i.e., on the passenger side of the floorboard between his feet. *See Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405 n.11; *Allen*, 249 S.W.3d at 695. Taking into account the applicable standard of review, the factors used to determine the sufficiency of the evidence linking Harris to the firearm, and the evidence, we hold "the combined and cumulative force of all admitted evidence," even when viewed in the light most favorable to the verdict, is legally insufficient to establish Harris possessed the firearm. *See Tate*, 500 S.W.3d at 413.

The evidence produced by the State in its attempt to link Harris to the firearm includes primarily evidence of proximity — the firearm was found was on the passenger-side floorboard between Harris's feet. However, the gun was in a bag — invisible to Officer Davila by his own admission until he opened the bag. Thus, although the bag containing the firearm was found on Harris's side of the vehicle, in an enclosed space, where Harris was seated — on the floorboard between his feet — the firearm was not in plain view. There was nothing in the bag, on the bag, or in the vehicle to connect the firearm to Harris. Officer Davila testified only that the firearm had not been reported stolen and it was not registered to Harris. Additionally, the firearm was not found in a vehicle owned or driven by Harris. Although Officer Davila testified the vehicle was not registered to either the driver or Harris, the driver claimed the vehicle belonged to him, stating he had purchased it approximately two weeks prior to the stop. The State presented no evidence to the contrary.

Officer Davila specifically testified Harris did not attempt to flee and was calm, neither fidgeting nor otherwise appearing nervous. Neither the driver nor Harris made any statements — conflicting or otherwise — about the firearm. After his arrest, when asked by Officer Davila whether the gun was registered to him, Harris's response, if any, was inaudible. Officer Davila

immediately responded by saying, "the Glock, no." The officer then asked Harris if the firearm was "hot." As noted above, Harris's response is inaudible. Officer Davila then states, "not that you know of, 'k.'" Harris never claimed ownership of the green bag or the Glock and, in fact, said little or nothing other than providing his name and date of birth, which he readily and correctly gave to the officer.

Finally, although Officer Davila testified he smelled the odor of marijuana and found "shake" in the vehicle, no narcotics or other contraband was found *on Harris*. *See Williams*, 313 S.W.3d at 398. Harris was not charged with possession of a controlled substance. Moreover, it is unclear exactly where in the vehicle the shake was found — Officer Davila merely stated in the video that it was all over the vehicle, a vehicle that did not belong to Harris.

The State argues the location of the firearm in the bag at Harris's feet constitutes a link from which the jury could have rationally inferred possession by Harris. Specifically, the State contends the jury could have inferred Harris did not "maneuver around the bag when he entered the vehicle, but rather placed the bag between his feet" for purposes of control and access. The State further contends the jury could have inferred possession because the firearm was in a bag, arguing the jury could have believed Harris hid it so no one, including law enforcement, would see it. Thus, based on the State's argument, Harris was linked to the firearm whether it was in plain view, *see Williams*, 313 S.W.3d at 397, or out of view. However, we have found no authority, nor does the State cite any, holding that contraband out of a defendant's view constitutes an affirmative link for purposes of possession. If we accept the State's position, the plain-view link is meaningless. *See id.*

The State also points to Harris's status as a violent felon and the type of firearm discovered as evidence from which the jury could have reasonably inferred Harris possessed the firearm. We disagree. As to Harris's status as a felon, the trial court specifically instructed the jury:

With respect to the evidence admitted in this case concerning the defendant having been previously convicted of a felony, if he was, you are instructed that such evidence cannot be considered by you as in any manner proving or tending to prove that the defendant was in unlawful possession of a firearm [on the relevant date].

Thus, Harris's prior criminal history — violent or otherwise, was not evidence from which the jury could have inferred unlawful possession of the firearm by Harris. And, we presume the jury followed the trial court's instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

As for the nature of the weapon, the law required the State to link Harris to the firearm regardless of the type of firearm he was alleged to have possessed. Neither the statute under which Harris was charged nor the affirmative-link authorities refer to the type of firearm possessed. *See* TEX. PENAL CODE ANN. § 46.04(a)(1); *Williams*, 313 S.W.3d at 397–98. The State has not cited any authority suggesting the type of firearm is an affirmative link for purposes of establishing possession, nor have we found any. We hold the type of firearm allegedly possessed is not evidence of possession or evidence from which a jury could reasonably infer possession. To hold otherwise would permit a conviction without the State having produced evidence actually linking Harris to the firearm, i.e., a conviction based on speculation.

The State also points to the existence of a second firearm, arguing the jury could have inferred the existence of two weapons suggests the existence of criminal activity from which the jury could have inferred Harris possessed the weapon nearest to him. However, there is nothing in the record about the second gun other than it was found under the driver's seat. To suggest the mere existence of one gun implies possession of a second is nothing more than speculation. The State has not cited any authority that the existence of a second gun — given the absence of any evidence regarding ownership of the gun — is a link establishing possession of a different firearm.

Finally, the State points to Harris's "head shaking" in response to Officer Davila's question about "rolling with heat." The State contends Harris's shaking his head suggested Harris knew he was caught and was shaking his head as if to say, "Oh, no, we're caught." The State asserts that if the firearm did not belong to Harris he would have protested and rebuked the driver for having weapons in the car without telling him. The State also suggests Harris's calm, cooperative demeanor allowed the jury to infer possession, suggesting such behavior was that of someone experienced with the criminal justice system. Thus, from a headshake, silence, and cooperation with law enforcement, the State suggests the jury could rationally infer a link between Harris and the firearm. This is mere speculation, which is not evidence. *See Tate*, 500 S.W.3d at 413.

In large part, the State points to the absence of any of the applicable factors (other than those related to proximity) to establish an affirmative link — firearm not in plain view, vehicle not registered to Harris, no attempt to flee, no expression of nervousness, no protestations of innocence, etc. — as factors establishing an affirmative link. The State also argues that although the existence of the "shake," a second gun, and Harris's failure to protest his innocence might not as individual factors permit an inference of possession, but in combined force, when viewed in the light most favorable to the verdict, is sufficient to support Harris's conviction. We decline to adopt this rationale.

In support of its conclusion that the cited evidence is sufficient to permit the jury to rationally infer possession, the State relies on an unpublished case from the Dallas Court of Appeals. *See Edwards v. State*, Nos. 05-08-00686-CR & 05-08-00687-CR, 2010 WL 2636133, at *10-11 (Tex. App.—Dallas July 2, 2010, pet. ref'd) (not designated for publication). First, we note that under the Rules of Appellate Procedure, unpublished criminal cases "have no precedential value." *See* TEX. R. APP. P. 47.7(b). Second, *Edwards* is distinguishable. In *Edwards*, the evidence showed police received a complaint that drugs were being dealt out of a particular

house. 2010 WL 262133, at *1. The State presented evidence the defendant and the firearm were in a "trap" house, i.e., drug house, used only for the purchases and sale of drugs. *Id.* at *3. According to the evidence, only people involved in the drug trade would have been permitted inside the house; it was heavily fortified to prevent unauthorized entry. *Id.* A surveillance camera monitored the front yard. *Id.* In the house, law enforcement found nothing of value — no furniture, clothing, etc. — only cocaine, PCP, and a firearm. *Id.* There was also evidence — given there were only three people in the house — the defendant was a "lookout" because he was in the living room, with the camera and monitor, looking out the front window. *Id.* Moreover, although the gun was not found on the defendant, it was found in the room with the defendant and the State produced testimony that firearms are commonly used in the drug trade to protect people and property. *Id.* at *4. Finally, although the appellate court held this evidence was sufficient to permit the jury to find the defendant guilty, it nevertheless reversed his conviction because the jury was erroneously instructed it could find the defendant guilty as a *party* to the possession of a firearm offense, which the court of appeals held was an erroneous legal theory. *Id.* at *8. Because it was impossible to determine whether the jury found the defendant guilty of actual possession or possession as a party, he was egregiously harmed and his conviction had to be overturned. *Id.*

The only commonality between the facts in *Edwards* and the facts in this case are the factors of: (1) proximity — the firearm in *Edwards* was found in the room where the defendant was acting as a lookout and the firearm here was found in a bag on the floorboard beneath Harris's feet; and (2) an enclosed space — the firearm in *Edwards* was found in a room and the firearm here was found in a vehicle. *See id.* at *3–4. Harris was not found alone in the vehicle with the firearm, whereas the defendant in *Edwards* was found alone in the living room with the gun. *See id.* Thus, the evidence in this case differs from that presented in *Edwards*.

Although the absence of various links and the number of links is not dispositive, *see Williams*, 313 S.W.3d at 398, neither is evidence converse to those links, e.g., firearm not in plain view, vehicle not registered to Harris, no attempt to flee, no expression of nervousness, no protestations of innocence, etc. Moreover, the other evidence relied on by the State is speculative, and the law precludes inferences from speculative evidence. *See Tate*, 500 S.W.3d at 413. Jurors may not draw conclusions based on pure speculation. *Id.* Thus, speculative evidence, even when combined with other purely speculative evidence, is not evidence from which a jury can draw a reasonable inference. *See id.* Inferences must be supported by actual evidence. *See id.*

We recognize we must consider the combined force of the evidence and view it in the light most favorable to the verdict. *See id.* Here, however, the combined force of the evidence, even when viewed in the light most favorable to the verdict, does not permit a finding of guilt. In essence, the evidence shows a firearm in a closed bag between Harris's feet on the floorboard of a vehicle, which was driven and owned by someone else. Thus, other than the fact that Harris was in an enclosed space — a vehicle — the other evidence shows only proximity, which is insufficient to link Harris to the firearm to establish possession. Accordingly, we sustain Harris's contention that the evidence is legally insufficient to support his conviction for the offense charged.

## CONCLUSION

Based on the foregoing, we sustain Harris's sole issue and hold the evidence is legally insufficient to support Harris's conviction for the offense of felon in possession of a firearm. We therefore reverse the trial court's judgment and render a judgment of acquittal.

Marialyn Barnard, Justice

Publish