

# NUMBER 13-19-00160-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ADRIAN MIGUEL COLON,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                               **Appellee.**

---

### On appeal from the 399th District Court
### of Bexar County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Hinojosa, Perkes, and Tijerina**
**Memorandum Opinion by Justice Perkes**

A jury convicted appellant Adrian Miguel Colon of unlawful possession of a firearm,

a third-degree felony. *See* TEX. PENAL CODE ANN. § 45.04(a)(1), (d). After Colon pleaded

"true" to two prior felony convictions, the trial court sentenced him as a habitual felon to

thirty-five years' imprisonment. *See id.* § 12.42(d). By a single issue, Colon challenges the sufficiency of the evidence to support his conviction. We affirm.[1]

## I.    BACKGROUND

On January 31, 2018, Troopers Jason McCarrell and James Vinson with the Texas Highway Patrol were patrolling San Antonio after midnight when they observed a vehicle turn into the parking lot of a closed business and pick up a passenger. The troopers subsequently conducted a traffic stop after the vehicle made a wide right turn. A check on the vehicle's registration came back as expired. Colon drove the vehicle, Shirley Martinez was the front passenger, and Jesus Guerrero was the rear passenger. The traffic stop was recorded by the troopers' dashcam and played for the jury.

Although the vehicle was registered to another person, Colon claimed that he purchased the vehicle the previous day. When asked about the contents of a backpack visible in the back seat, Colon initially claimed that Guerrero owned the backpack. After Trooper McCarrell informed Colon that he observed Guerrero get in Colon's car without a backpack, Colon acknowledged that the backpack and its contents, including drug paraphernalia and a "clip," belonged to him. Trooper McCarrell searched the backpack and confirmed that it contained baggies, a scale, and a loaded magazine for a .40 caliber Glock handgun. Trooper McCarrell was able to identify the manufacturer and caliber of the magazine based on his experience and the information contained on the magazine, such as the Glock logo.

Trooper McCarrell described Colon as "very nervous from the get-go," saying that anytime there was silence, Colon "would talk, ramble, would repeat himself over and over

---

[1] This appeal is before us on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

2

again, and move around a lot." When Trooper McCarrell asked if there was a gun to go along with the magazine, Colon told him he could not be around guns because he was a felon. However, Colon indicated that Martinez had something to tell him, insinuating there was a gun, and that it belonged to Martinez.

As Trooper McCarrell approached Martinez, he noticed that she was "crying very heavily." Trooper McCarrell was suspicious of Colon's version of events so he asked Martinez a series of questions to test her knowledge about the gun. Although Martinez initially admitted the gun was hers and that she uses it for protection, she could not tell Trooper McCarrell the gun's location in the car, the gun's manufacturer and caliber, or how to operate the unique safety mechanisms on a Glock firearm. The only thing she knew about the gun was that it was black. Under Trooper McCarrell's continued questioning, Martinez eventually recanted her prior statement and said, "It's not my gun. . . . It was in the car when he picked me up." Officers later arrested Martinez for possession of a controlled substance after a search revealed that she was carrying what appeared to be heroin and methamphetamine.

Meanwhile, Trooper McCarrell conducted a search of the car and located a loaded .40 caliber Glock handgun in the center console and a .40 caliber bullet in the cup holder of the center console.[2] After Colon was arrested for unlawful possession of a firearm and *Mirandized*, he continued to deny that the gun belonged to him but offered that his fingerprints would likely be on the gun because he removed the magazine earlier in the day. Subsequent forensic testing did not detect any latent fingerprints on the gun,

_____
[2] The recovered gun contained a magazine, meaning the troopers recovered two .40 caliber Glock magazines, one in the backpack and one in the gun.

3

magazine, or ammunition.

The jury found Colon guilty of unlawful possession of a firearm, and this appeal ensued.

## II.    LEGAL SUFFICIENCY

By his sole issue, Colon contends that the evidence was legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that he possessed the firearm.

## A.    Standard of Review

When reviewing claims of legal insufficiency, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). The fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony and is presumed to have resolved any conflicts in the evidence in favor of the verdict. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (giving deference to the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

"Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim App. 2013) (citing *Hooper*, 214 S.W.3d). Juries are permitted "to draw reasonable inferences as long as each inference is supported by the

4

evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. In this case, a hypothetically correct charge would instruct the jury to find Colon guilty of unlawful possession of a weapon if he possessed a firearm before the fifth anniversary of his release from confinement or supervision following a felony conviction. *See* Tex. Penal Code Ann. § 46.04(a)(1). A person "possesses" a firearm if they have "actual care, custody, control, or management" of the weapon. *See id.* § 1.07(a)(39).

## B. Applicable Law

When, as here, the firearm is found in a vehicle, appellate courts consider a non-exclusive list of factors or "affirmative links" to determine if possession was established, including whether: (1) the firearm was in plain view; (2) the defendant was the owner of the vehicle in which the firearm was found; (3) the defendant was in close proximity and had ready access to the firearm; (4) the firearm was found on the same side of the vehicle as the defendant; (5) the defendant's conduct indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (6) the defendant had a special connection or

relationship to the firearm; (7) the place where the firearm was found was enclosed; (8) occupants of the vehicle gave conflicting statements about relevant matters; (9) the defendant was the driver of the vehicle in which the firearm was found; (10) other contraband was found on the defendant; (11) the defendant attempted to flee; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *Harris v. State*, 532 S.W.3d 524, 529 (Tex. App.—San Antonio 2017, no pet.) (citing *Williams v. State*, 313 S.W.3d 393, 397–98 (Tex. App.—Houston [1st Dist.] 2009, pet ref'd)). Our review turns on the quality, not quantity, of affirmative links present. *Id.* (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). Further, the absence of certain affirmative links in not evidence of innocence to be weighed against those that are present. *Id.* (citing *Williams*, 313 S.W.3d at 398).

## C.    Analysis

The only element Colon disputes is whether the evidence was sufficient to prove that he possessed the gun. Just as he argued at trial, Colon points out that there were several affirmative links between Martinez and the gun: she was in close proximity and had ready access to the firearm; she initially claimed ownership of the gun; she was crying, which may indicate a consciousness of guilt; and she was found with other contraband in her possession. *See Harris*, 532 S.W.3d at 529. On the other hand, contrary to Colon's suggestion, there were also numerous affirmative links between Colon and the gun: Colon was the driver and purported owner of the vehicle; his proximity and access to the gun were equal to Martinez's; the gun was located in an enclosed area; Trooper McCarrell described Colon as "very nervous"; Colon was also in possession of other

6

contraband; after initially lying to Trooper McCarrell, Colon admitted to owning the backpack and its contents, including the matching magazine; and Colon admitted to knowing of the gun's existence in the car. *See id.* Additionally, and perhaps most importantly, Colon admitted to previously exercising actual control over the gun that same day to the extent that he expected his fingerprints to be found on the gun. *See id.*

We presume the jury resolved the conflicting inferences that can be drawn from this evidence in favor of the prosecution. *See Bartlett*, 270 S.W.3d at 150. For example, the jury credited the State's theory that Martinez was covering for Colon when she initially claimed the gun and that her subsequent recantation was the actual truth. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony."). Moreover, the affirmative links tying Colon to the gun were not only numerous, but substantial in their cumulative effect. *See Harris*, 532 S.W.3d at 529. Viewing the evidence in the light most favorable to the prosecution, we conclude that any rational juror could have found that Colon possessed the gun beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Whatley*, 445 S.W.3d at 166; *Harris*, 532 S.W.3d at 529. We overrule Colon's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of August, 2020.