

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00204-CR

———————————————————

DAVYEON BATISTE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1606616D

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I. Introduction

At the end of May 2021, Appellant Davyeon Batiste pleaded guilty to third-degree felony deadly conduct—knowingly discharging a firearm at or in the direction of L.D., *see* Tex. Penal Code Ann. § 22.05(b)—in exchange for three years' deferred-adjudication community supervision, a fine, the State's waiver of a second deadly conduct count, and other conditions. One of the community-supervision conditions prohibited Batiste from possessing a firearm.[1]

In September 2021, Batiste drove a decked-out Audi[2] by himself in a seedy area of town; during a traffic stop, police found a loaded gun in the Audi's glove box. The State petitioned to proceed to adjudication. Batiste pleaded not true to the State's allegation that he had possessed a firearm on or about September 16, 2021, but the trial court found the allegation true and sentenced Batiste to three years' confinement. In a single issue, Batiste complains that the evidence is insufficient to support the trial court's finding. Because the evidence is sufficient, we affirm.

---

[1]Batiste signed a list of high-risk-offender supplemental community-supervision conditions, which included that he was not to "carry or possess a firearm or other dangerous or deadly weapons" and that he was not to "remain in any vehicle where such a weapon is possessed."

[2]The arresting officer described the Audi as standing out in the area because of its tinted windows, rims, and carbon-fiber cover on the gas tank.

## II. Discussion

Batiste argues that the State had the burden to prove that he had personally possessed the firearm but failed to do so such that the trial court abused its discretion by revoking his deferred-adjudication community supervision and adjudicating him guilty.

### A. Revocation

We review for an abuse of discretion the determination to proceed with an adjudication of guilt. *See Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd); *see also* Tex. Code Crim. Proc. Ann. arts. 42A.108(b), .751(d). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a term of his community supervision as alleged in the motion to revoke. *See Cherry*, 215 S.W.3d at 919. In the revocation context, "preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation," which is a much lower standard than "beyond a reasonable doubt" but a much higher standard than "probable cause" and "reasonable suspicion." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). We review the evidence in the light most favorable to the trial court's ruling. *Cherry*, 215 S.W.3d at 919. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Miles v. State*, 343 S.W.3d 908, 912 (Tex. App.—Fort Worth 2011, no pet.).

**B. Possession**

The Penal Code defines "possession" as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39). Certain factors, either alone or in combination, may be considered in deciding whether someone has knowingly possessed a firearm. *See Swapsy v. State*, 562 S.W.3d 161, 165 (Tex. App.—Texarkana 2018, no pet.) (reviewing evidentiary sufficiency to support conviction for unlawful possession of a firearm by a felon). These factors include: (1) the defendant's presence when the search was conducted, (2) whether the firearm was in plain view, (3) whether the defendant was in close proximity to and had access to the firearm, (4) whether the defendant had a special connection to the firearm, (5) whether the defendant possessed other contraband when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether the defendant owned or had the right to possess the place where the firearm was found, (10) whether the place where the firearm was found was enclosed, (11) whether the persons involved gave conflicting statements on relevant matters, and (12) whether the defendant's conduct indicated a consciousness of guilt. *Id.* The logical force of the links, not their number, is dispositive. *Id.* But mere presence in the same place as the weapon does not support a possession finding. *See Dowdy v. State*, No. 02-18-00112-CR, 2019 WL 3436607, at *4 (Tex. App.—Fort Worth July 30, 2019, no pet.) (mem. op., not designated for publication) (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985)).

4

Rather, the State must link the defendant to the item with evidence of additional facts and circumstances indicating the defendant's knowledge and control of the item. *Id.*; *see Harris v. State*, 532 S.W.3d 524, 528 n.1 (Tex. App.—San Antonio 2017, no pet.) (explaining that in firearm-possession cases, courts analyze the evidentiary sufficiency under the same rules adopted for unlawful possession of a controlled substance).

## C. Evidence

Two witnesses testified in the adjudication portion of the hearing: the court's senior probation officer Candace Fyfe and Dallas Police Officer Perry Wargnier.

Fyfe testified that she had met with Batiste when he was originally placed on three years of deferred adjudication. As the senior court officer, she wrote up the community-supervision conditions and reviewed them with him, including the provision that he was not to possess or own a firearm. Batiste lived in Dallas, so in June 2021 she initiated a transfer for him to Dallas for supervision.

Officer Wargnier testified that he was working patrol on September 16, 2021. He conducted a traffic stop of a white Audi, which had left the Walnut Inn and had passed through the same intersection multiple times in a 30-minute period, violating Dallas's "no cruising" ordinance for that area.[3] *See* Dallas, Tex., Dallas City Code, ch. 28, § 28-42.1 (2022) ("Cruising Prohibited in Designated Areas"), at https://codelibrary.amlegal.com/codes/dallas/latest/dallas_tx/0-0-0-112624 (last

---

[3]Officer Wargnier explained that a "no cruising" zone is set up in an area to deter prostitution.

visited Mar. 7, 2023). Officer Wargnier said that the Walnut Inn was a seedy motel so well-known as a rampant prostitution hub that "there's pimps and prostitutes that line the streets along Walnut Hill" and do not move off the street corners when police officers drive by.

In addition to the Audi's tinted windows and rims, which made it stand out in the area, the vehicle had no front-mounted license plate, and its license plate's rear cover obstructed the state name. *See* Tex. Transp. Code Ann. § 504.945(a)(7)(B) (stating that a person commits an offense if he attaches to or displays on a motor vehicle a license plate that has a covering that alters or obscures one-half or more of the name of the state in which the vehicle is registered). Batiste was the Audi's driver and sole occupant, but Officer Wargnier did not recall to whom the vehicle was registered.[4]

When Officer Wargnier stopped him, Bastiste was on the phone, had his music turned up, and "was seemingly very carefree about the situation that he was being stopped by the cops." When he asked Batiste to hang up the phone, Batiste told him that he could not do that. Officer Wargnier then ordered him to hang up, and Batiste closed his cell phone, locked it without ending the call, and "began [to exhibit] a little bit of confrontational attitude at that point."

---

[4]Officer Wargnier and his partner had worn body cameras, and his vehicle's dashboard camera had been operational during the stop, but Officer Wargnier did not bring the videos to the hearing.

After Officer Wargnier identified Batiste, he asked Batiste for proof of insurance. Batiste was unable to provide it, instead handing the officer "Medicare doctor cards[,] insisting that that was his insurance," which Officer Wargnier found strange. Batiste also motioned a few times towards the glove box, stating that his insurance was in there, and he kept reaching over to it "to fiddle with paperwork or something."

Officer Wargnier then ran a warrants check and discovered that Batiste had multiple warrants out of different counties and a probation-violation warrant pending from the Sheriff's Office in Fort Worth. He removed Batiste from the vehicle, placed him in handcuffs, and searched the vehicle for officer safety.[5] During the search, he found a loaded Glock 19 firearm in the glove box.

When Officer Wargnier received confirmation on the warrants, he placed Batiste under arrest for the warrants and for unlawfully carrying a firearm and searched him incident to arrest. Officer Wargnier and his partner conducted an

---

[5]Officer Wargnier phrased the vehicle search as a "pat down of that vehicle for firearms for safety." A police officer may lawfully stop and detain a person for a traffic violation, and during the detention, he may request information such as the driver's license and vehicle ownership, and he may run a warrant check, conduct a pat-down search of the driver for weapons, and request the driver's consent to search the vehicle. *Baxter v. State*, No. 02-10-00364-CR, 2011 WL 3835664, at \*3 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op., not designated for publication) (identifying pertinent Supreme Court and Court of Criminal Appeals precedent). Batiste does not challenge the traffic stop or vehicle search.

7

inventory search of the vehicle, where they found crumbs of a green leafy substance that they believed to be marijuana.

On cross-examination, Officer Wargnier said that he had not been aware that the unlawfully-carrying-a-firearm charge had been no-billed by a Dallas County grand jury. Defense counsel offered into evidence, and the trial court admitted, Batiste's preliminary initial appearance and the no-bill indictment notification.

**D. Analysis**

Batiste argues that the State failed to meet its burden to prove that he had actual care, custody, control, or management of the firearm, asserting that there is no evidence to indicate that he knew the firearm was in the glove box.[6] The State responds that the trial court did not abuse its discretion because there was sufficient evidence to support its finding based on Batiste's sole occupancy of the vehicle as its

---

[6]Batiste also argues that the Dallas County grand jury's decision to no-bill the firearm-possession charge fell far short of the preponderance standard required to revoke his deferred adjudication. He refers us to *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009), in which the court explained that while probable cause is a relatively high level of suspicion, "it falls far short of a preponderance of the evidence standard." *See also Ex parte Plumb*, 595 S.W.2d 544, 545 (Tex. Crim. App. [panel op.] 1980) ("The return of an indictment establishes probable cause as a matter of law."). But the record does not reflect why the Dallas County grand jury decided to no-bill the charge against Batiste. *See Dickerson v. State*, No. 11-18-00268-CR, 2020 WL 6373274, at *2 (Tex. App.—Eastland Oct. 30, 2020, no pet.) (mem. op., not designated for publication) ("Even though the standard for a return of a true-bill by a grand jury is low, its return of a no-bill has no evidentiary value because there is no way to determine what specific evidence was brought before the grand jury.").

driver, his close physical proximity to the weapon, the discovery of other contraband in the vehicle, and his making furtive gestures towards the glove box.

The record reflects that Fyfe told Batiste that he was not allowed to possess a firearm while on deferred-adjudication community supervision. Batiste was by himself in a distinctive vehicle in a seedy area of town and had been driving around that area for half an hour when Officer Wargnier stopped him for violating the "no-cruising" zone and for license plate violations. *Compare Harris*, 532 S.W.3d at 531–32, 534 (holding evidence insufficient to establish knowing possession when the firearm was in a vehicle driven and owned by someone else and therefore not in the defendant–passenger's exclusive possession), *with Bates v. State*, 155 S.W.3d 212, 217–18 (Tex. App.—Dallas 2004, no pet.) (holding evidence sufficient to establish possession when, among other things, driver was alone in the vehicle and weapon was in close proximity to and accessible by him from the driver's seat). Batiste initially refused to end his phone conversation when Officer Wargnier stopped him, and when asked for his insurance, he handed Officer Wargnier some Medicare cards and gestured to the glove box, which he kept reaching over to "fiddle with" and which was where the weapon was found. Further, Batiste's indicating to Officer Wargnier that his proof of insurance was in the glove box was some evidence of his knowledge of the glove box's contents from which the trial court could reasonably conclude he knew the gun was there and that he was in possession of it. As the vehicle's driver, Batiste was in close proximity to the glove box and therefore had access to the

9

firearm, and what Officer Wargnier believed to be marijuana crumbs—other contraband—was found inside the vehicle.

The record is unclear regarding Batiste's ownership or right to possess the vehicle he was driving but shows his familiarity with the glove box. Although the record might be insufficient to prove possession of a firearm beyond a reasonable doubt, it suffices to meet revocation's preponderance standard: The trial court could have reasonably concluded that the greater weight of the credible evidence showed that Batiste, driving around by himself in an unusual vehicle in a questionable part of town, had knowingly possessed the loaded firearm in the vehicle's glove box and thereby violated a condition of his community supervision. *See Hacker*, 389 S.W.3d at 865.

### III. Conclusion

Having overruled Batiste's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 9, 2023