

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00309-CR

Melvin Lee **HILL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 274th Judicial District Court, Guadalupe County, Texas
Trial Court No. 23-0530-CR-B
Honorable Daniel H. Mills, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: May 13, 2026

AFFIRMED

Appellant, Melvin Lee Hill, was convicted of possession of a controlled substance, attempt to commit aggravated assault with a deadly weapon, and unlawful possession of a firearm. He complains in this appeal the evidence is legally insufficient to support his convictions for attempted aggravated assault with a deadly weapon and unlawful possession of a firearm. We affirm.

## BACKGROUND

In 2022, Donna McClary engaged the legal services of Patricia Finch to divorce her husband, Melvin Hill. Finch convinced McClary to seek a protective order against Hill after he had threatened to kill McClary's sons if they came to the ranch where Hill was living. McClary asserted that the ranch, which the parties refer to as the "Waelder property," was her separate property. According to McClary, Hill had been selling items from the property and destroying parts of it. Finch filed a motion for temporary orders, seeking to evict Hill from the Waelder property. While Hill initially appeared for the hearing on the motion, he left the courthouse after yelling obscenities about the proceedings, McClary, and Finch. The judge granted the motion in absentia and entered temporary orders evicting Hill from the Waelder property. On the evening of December 13, 2022, Hill was served with the temporary orders in Luling.

Early in the morning of December 14, 2022, Hill was found standing outside of Finch's office in Seguin. Hill was wearing a hoodie, drawn up, with reflective sunglasses on despite it being a warm day. He walked back and forth in front of the office location, making the staff feel nervous. Finch's office staff called for a bailiff from the courthouse next to the office to confront him, but Hill had left before the bailiff could confront him. Once Finch arrived at her office and staff informed her that Hill was in the vicinity, she called the police.

City of Seguin Police Officer Castro was dispatched to the scene. Officer Castro testified that he initially was unable to locate Hill; however, while he was leaving to respond to another call, he spotted a black Mustang registered to Hill's ex-wife, Tammy Hill. Officer Castro left to respond to the other call and returned approximately an hour later. The Mustang was still present outside of Finch's office. City of Seguin Police Officer Herrera arrived at the scene to assist. Officer Castro approached the vehicle and found Hill sitting in the car with the smell of marijuana

emanating from the inside of the vehicle. Officer Castro asked Hill to step out of the car, and Officer Herrera did an initial pat-down for weapons. Hill admitted to having a pocketknife on his person, which the officer located. When asked why he was in the area, Hill answered that he had driven from Luling to the area outside of Finch's office in Seguin to do some Christmas shopping. Officer Castro testified that, although there are some shops nearby, there are no shops in the immediate vicinity.

Officer Castro next observed what appeared to be the butt of a marijuana cigarette and proceeded to do a preliminary search of the vehicle, where he located a bag containing methamphetamine and drug paraphernalia in the center console. Officer Castro then placed Hill under arrest. Hill initially denied ownership of the drugs and stated he had not used methamphetamines in years. While conducting a search of Hill's person however, Officer Castro located an additional bag of methamphetamine in the pocket of Hill's cargo pants. Once Hill was placed in the back of the police vehicle, Officer Castro conducted a thorough search of the Mustang. In the vehicle's trunk, he located an AK-47 rifle, another long rifle, ammunition, and a backpack containing two additional loaded handguns, rope, and zip-ties.

Hill's ex-wife, Tammy Hill, testified that she had removed the guns from the Waelder property after Hill received the eviction order. She stated that Hill was unaware she had placed the guns in the vehicle and had left them there. While most of the guns were registered to McClary, Tammy Hill testified they were in fact gifts for her and Hill's son. Hill's son testified that several of the items found in the trunk and backpack were for hunting.

Hill was charged with one count of possession of methamphetamines in an amount of more than four grams, but less than 200 grams, with a repeat-felony-offender enhancement, one count of attempted aggravated assault with a deadly weapon, with a repeat-felony-offender enhancement,

and one count of unlawful possession of a firearm. He was convicted on all three counts and sentenced to ninety-nine, twenty, and ten years' imprisonment, respectively, with his sentences to run concurrently.

Hill challenges his convictions for attempted aggravated assault with a deadly weapon and unlawful possession of a firearm, contending that the evidence was legally insufficient to prove that he possessed the firearms located in the trunk of the vehicle.

### STANDARD OF REVIEW

When a conviction is challenged on legal sufficiency grounds, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). As the reviewing court, we must "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Baez v. State*, 486 S.W.3d 592, 594 (Tex. App.—San Antonio 2015, pet. ref'd) (internal quotation marks omitted). Although juries may not speculate, they may "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

"The sufficiency of the evidence is measured against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument." *Fraser v. State*, 726 S.W.3d 253, 258 (Tex. Crim. App. 2025) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

### UNLAWFUL POSSESSION OF A FIREARM

By his first and third issues, Hill argues the State did not provide legally sufficient evidence to establish he possessed the firearms found in the trunk of the Mustang to support his convictions for attempted aggravated assault and unlawful possession of a firearm. Because both charges involve whether Hill possessed the firearms, we consider Hill's conviction for unlawful possession first.

### I. Applicable Law

Under Texas law, "[a] person who has been convicted of a felony commits an offense if he possesses a firearm after conviction and before the fifth anniversary of the person's release from confinement[.]" TEX. PENAL CODE ANN. § 46.04(a)(1). One "voluntarily engages in . . . possession" if he "knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(a), (b). "If the firearm is not found on the defendant or is not in his exclusive possession, as in this case, the State must produce evidence affirmatively linking him to the firearm." *Harris v. State*, 532 S.W.3d 524, 528 (Tex. App.—San Antonio 2017, no pet.) (citations omitted).

Appellate courts have recognized the following non-exclusive factors to determine whether there is sufficient evidence linking a defendant to a firearm found in a vehicle for purposes of establishing possession: "whether: (1) the firearm was in plain view; (2) the defendant was the owner of the vehicle in which the firearm was found; (3) the defendant was in close proximity and had ready access to the firearm; (4) the firearm was found on the same side of the vehicle as the defendant; (5) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (6) the defendant had a special connection or relationship to the firearm; (7) the place where the firearm was found was enclosed; (8) occupants of the vehicle gave conflicting statements about relevant matters; (9) the defendant was the driver of the vehicle in which the firearm was found; (10) other contraband was found on the defendant; (11) the defendant attempted to flee; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested." *Id.* at 529 (citations omitted). The absence or presence of certain links is not dispositive, but rather courts look to the "logical force of all evidence, direct or circumstantial." *Id.*

## II.    Discussion

We hold that, viewed in the light most favorable to the verdict, sufficient evidence links the firearms to Hill. Hill's former spouse Tammy Hill was the registered owner of the vehicle where the weapons were found. However, Hill was the sole occupant and driver of the vehicle when he was located outside of Finch's office on the day of his arrest. Additionally, testimony connects Hill to control of the firearms. Three of the four weapons were found to have been registered to McClary. Tammy Hill testified that she believed McClary had bought the firearms for her son because Hill was not able to purchase them legally. Hill's son, however, did not testify regarding ownership of the firearms, although he testified on other matters, including that he and

Hill hunted with the guns. Tammy Hill also testified that the firearms had been stored with Hill while he was living at the Waelder property.

Hill refers us to Tammy Hill's testimony that she put the firearms in the trunk while helping Hill move sometime between Hill being served with the eviction notice on the evening of December 13, 2022, and Hill being found at Finch's office the next morning. However, the jury could reasonably disbelieve this testimony. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Other testimony casts doubt on her veracity. Tammy Hill testified that she contacted the Seguin Police Department to obtain the firearms, but she acknowledged that the police department had no record of such a request. Likewise, the jury could reasonably disbelieve Hill's testimony. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Officer testimony and admitted video from Hill's arrest shows that bags of methamphetamines were found in the Mustang and on Hill's person, although Hill stated that he had not used the drug in several years. He also told the officers he was in the area for Christmas shopping, despite the lack of shopping in the area.

In sum, the direct and circumstantial evidence sufficiently supports Hill's link to the firearms found in the trunk of the Mustang and to Hill's conviction for unlawful possession of a firearm.

### ATTEMPTED AGGRAVATED ASSAULT

In his first issue, Hill contends his conviction for attempted aggravated assault is not supported by legally sufficient evidence because it was not proven that Hill knew there were firearms in the trunk of the Mustang; therefore, according to Hill, the evidence did not prove his attempted use or exhibition of a firearm or other deadly weapon necessary to support his conviction.

**I.  Applicable Law**

Attempt requires "an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PEN. CODE ANN. § 15.01(a). "If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt." TEX. PEN. CODE ANN. § 15.01(b). A person commits the offense of aggravated assault with a deadly weapon if they use or exhibit a deadly weapon during the commission of an assault as defined in Section 22.01. TEX. PEN. CODE ANN § 22.02. Under Section 22.01, a person commits an assault if they:

> (1) intentionally, knowingly, or recklessly cause bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threaten another with imminent bodily injury, including a person's spouse; or
>
> (3) intentionally or knowingly cause physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN. CODE ANN. § 22.01(a)(2), 22.02(a)(2).

To discern whether action was done "intentionally" or "knowingly," the factfinder "almost always" must infer these mental states "from acts and words." *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) (en banc). "The necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense." *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016). "Circumstantial evidence of intent must be reviewed with the same scrutiny as other elements of an offense." *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). "Just as circumstantial evidence is reviewed under the same standard as direct evidence, circumstantial

evidence of intent is reviewed under the same standard as circumstantial evidence of other elements." *Id.* at 521.

## II.    Discussion

The indictment alleges:

> On or about the 14th day of December, 2022, MELVIN LEE HILL, hereinafter referred to as defendant, did then and there, after making threats to and about Patricia Finch, travel to Patricia Finch's office while armed with firearms, ammunition, rope and zip-ties, with the specific intent to commit the offense of Aggravated Assault with a Deadly Weapon against Patricia Finch, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

To prove Hill committed attempted aggravated assault, the State was required to show that Hill, with specific intent to commit aggravated assault, performed an act that amounted to more than mere preparation that tended, but failed, to effect the commission of the aggravated assault. TEX. PEN. CODE ANN. § 15.01(b); 22.01. We hold, the evidence, viewed most favorably to the verdict, shows Hill acted with the specific intent to intentionally or knowingly commit assault against Finch while using or exhibiting a deadly weapon.

First, from the events leading up to and surrounding Hill's arrest, the jury could reasonably have found that Hill held the specific intent to intentionally or knowingly cause Finch bodily injury, or threaten such, or cause offensive or provocative physical contact with Finch, while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. Hill made several threats of violence concerning his continued residence at the Waelder property. Finch was successful in pursuing an order to evict Hill from the property. The morning after Hill is served with the eviction order, he appears outside of Finch's office with firearms, rope, and zip-ties. From this evidence the jury could reasonably infer Hill's assaultive intent. *See Moore*, 969 S.W.2d at 10 ("A defendant's mental state 'was concealed within his own mind and can only be determined

from his words, acts, and conduct.'" (citing *Norwood v. State,* 135 Tex. Crim. App. 406, 410, 120 S.W.2d 806, 809 (1938)).

Second, the evidence, viewed most favorably to the verdict, proves Hill performed an act that amounted to more than mere preparation that tended, but failed, to effect an aggravated assault. As discussed above, the evidence is legally sufficient to support his conviction for unlawful possession of the firearms found in the vehicle. Moreover, the evidence shows that Hill drove to Finch's office with those firearms. Although he told the officers that he was there for Christmas shopping, his statement was inconsistent with the character of the area—he was next to a courthouse, in a different city, with no shops in close proximity. He remained in the area outside of Finch's office for an extended period of time, even after initially leaving when confronted by a courthouse bailiff. Additionally, Finch's staff testified that Hill paced back and forth in front of the office.

Viewing the evidence in the light most favorable to the verdict, and deferring to the jury's credibility and weight determinations, we hold the evidence was legally sufficient for the jury to find that Hill, with the requisite specific intent, performed an act amounting to more than mere preparation to commit assault against Finch, while using or exhibiting a deadly weapon.[1]

### CONCLUSION

We affirm Hill's convictions for attempted aggravated assault with a deadly weapon and unlawful possession of a firearm.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH

---

[1] We do not reach Hill's second issue because it depends on our sustaining his first issue. *See* TEX. R. APP. P. 47.1. In his second issue, Hill contends that if his conviction for aggravated assault with a deadly weapon is reformed to a lesser-included offense because the evidence is insufficient to support the conviction, then we should remand for a resentencing.