**Opinion issued July 15, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00525-CR

———————————

**KEVIN BRADLEY BARNES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CR-1076**

---

## MEMORANDUM OPINION

Kevin Bradley Barnes appeals his conviction for possession with the intent

to deliver more than 200 but less than 400 grams of methamphetamine. *See* TEX.

HEALTH & SAFETY CODE § 481.112(a), (e). He was sentenced to 18 years'

imprisonment. On appeal, he argues that the evidence was insufficient to support his conviction and that the court erred by admitting certain evidence. We affirm.

## Background

Following a traffic stop in Santa Fe, Texas, Barnes was arrested and charged with possession with intent to deliver between 200 and 400 grams of methamphetamine. He proceeded to a jury trial. At trial, Officer J. Danesi of the Santa Fe Police Department testified that he initiated the traffic stop after observing Barnes's truck "mov[ing] over to oncoming traffic for no apparent reason." He stopped the truck, which was pulling an empty flatbed trailer displaying an Alaska license plate, because it was failing to maintain a single marked lane. Officer Danesi knew the area had lots of bars and testified that in his tenure, he had made several arrests in the area for driving while intoxicated ("DWI").

When Officer Danesi approached the vehicle, he checked Barnes and the female passenger's identification.[1] Both had active warrants for their arrest, so he asked them to get out of the truck while dispatch verified the warrants. Officer Danesi testified that the passenger was Ashley Woodard and that his partner stood with her while he attended to Barnes.

---

[1]     Officer Danesi identified Barnes in court as the driver he pulled over.

Officer Danesi detained Barnes, patting him down as part of the detention while waiting for confirmation of the outstanding warrants from dispatch. Barnes consented to a search of his pockets. Officer Danesi found about $1,400 in cash and a baggie containing what he thought was crystal methamphetamine in the pocket of the shorts Barnes was wearing. Officer Danesi testified that Barnes started "freaking out a little bit" when the drugs were found.

Officer Danesi then searched Barnes's four-door pickup truck. In the driver's side door, Officer Danesi found a bottle of fake urine. Under the front passenger seat, he found a broken glass pipe used for smoking methamphetamine. He also found a black backpack on the floorboard of the back seat. Inside the backpack, he found bags containing what he believed was crystal methamphetamines of different colors. The drugs were stored in plastic bags like the bag recovered from Barnes's pocket. He also found a scale with drug residue on it. Officer Danesi suspected that Barnes sold methamphetamine based on the cash in Barnes's pocket, the large amount of methamphetamine, and the scale in the backpack. Officer Danesi asked Barnes where he worked, and Barnes responded that he worked as an oil field inspector. The backpack had a logo that said "S&B" and "Frac Texas." Officer Danesi knew that S&B was a petrochemical company. Officer Danesi testified that Woodard told him that she did not work.

Officer Danesi testified that Barnes said that he had just left the hospital, where he was treated for a leg injury. As a precaution, Officer Danesi called for emergency medical services ("EMS") to examine Barnes. EMS arrived a few minutes later. Barnes also told Officer Danesi that he had just put on the shorts where the methamphetamine was found.

The court admitted into evidence Officer Danesi's dashboard camera video and his body camera video showing the entire encounter with Barnes and Woodard.

A forensic scientist with the Texas Department of Public Safety Crime Laboratory testified that she weighed the methamphetamine from the backpack. She testified that the gross weight of the bags with packaging was 305.58 grams. She realized the backpack did not contain more than 400 grams of methamphetamine, which would have resulted in a higher criminal charge. Once she found more than 200 grams of drugs, there was no reason for her to test other evidence because it would not bring a higher charge.

An investigator from the Galveston County District Attorney's office testified that she used law enforcement databases to investigate Barnes. She entered his name, date of birth, and social security number. The database then returned emails and phone numbers associated with those identifiers. The court admitted into evidence results from her database searches. Over objection, the

court admitted into evidence search results from two databases. The database recovered that Barnes's name, date of birth, or social security number was linked to S.B. Management Inc. and S.B. Engineers Construction Limited. The investigator testified that S.B. Management was one of Barnes's last employers. The search also yielded that Barnes had an email address that included the domain name "sbec.com." The investigator then testified that S.B. or S.B.E.C. was an "engineering chemical plant."

The jury found Barnes guilty and assessed punishment at 18 years' imprisonment.

## Sufficiency of the Evidence

In his first issue, Barnes argues that the evidence was insufficient to prove that he knowingly possessed the backpack containing methamphetamine. We disagree.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable

doubt." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotation and citation omitted).

In conducting our review, we defer to the factfinder to "fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 318–19). The jury, as the sole judge of the facts and credibility of the witnesses, may choose to believe or disbelieve any witness or portion of their testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 ((Tex. Crim. App. 2020). We presume that the jury resolved any conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

"The key question is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (internal quotations omitted). And our role on appeal is "restricted to guarding against the rare occurrence when a [factfinder] does not act rationally." *Id.* (internal quotations omitted). Further, in our review, "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Evidence is sufficient if the inferences necessary to establish guilt are reasonable based on the cumulative force of all evidence considered in the light

most favorable to the verdict. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

**B.     Applicable Law**

The State was required to prove Barnes knowingly possessed with intent to deliver a controlled substance listed in penalty group 1, which includes methamphetamine. *See* TEX. HEALTH & SAFETY CODE § 481.112(a), (e), *see also id.* § 481.102(6) (identifying methamphetamine as member of penalty group 1). To support a defendant's conviction, the evidence must show that the defendant "knowingly possessed" the contraband, which requires proof that the defendant (1) exercised "actual care, custody, control, or management" over the substance and (2) knew the substance was contraband. *See id.* § 481.002(38) (definition of possession); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). "Deliver" means to transfer, actually or constructively, to another a controlled substance, including an offer to sell a controlled substance. TEX. HEALTH & SAFETY CODE § 481.002(8). The State need not show exclusive possession of the contraband to support a conviction. *Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Control over contraband may be exercised by more than one person. *Id.*

7

## C.    Analysis

On appeal, Barnes's challenges the sufficiency of the evidence to prove he possessed the methamphetamine.[2] Barnes argues that the evidence is insufficient due to "a lack of affirmative link as to the drugs in the knapsack." App. Br. at 24. He argues that his passenger, Woodard, drove his truck to pick him up from the hospital before he was pulled over and that she had sole possession of everything in his truck, including the backpack with methamphetamine.

Because Barnes was not in exclusive possession of the place where the controlled substance was found, we cannot conclude that he had knowledge of and control over the contraband unless the State established an "affirmative link" between Barnes and the contraband. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *Robinson*, 174 S.W.3d at 325. An affirmative link "generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Affirmative links "are established by the totality of the circumstances." *Beall v. State*, 237 S.W.3d 841, 850 (Tex. App.—Fort Worth 2007, no pet.). The elements of possession may be proven through direct or circumstantial evidence, although the

---

[2]    Barnes does not challenge the sufficiency of the evidence to prove intent to deliver the drugs.

evidence must establish that the accused's connection with the substance was more than fortuitous. *Evans*, 202 S.W.3d at 161–62; *Poindexter*, 153 S.W.3d at 405–06. Mere presence in the same place as the controlled substance is not enough to justify a finding of possession. *Evans*, 202 S.W.3d at 162. But presence or proximity, when combined with other evidence, either direct or circumstantial (e.g. "affirmative links"), can establish possession. *Id.*

The Court of Criminal Appeals has adopted a "non-exclusive list of fourteen factors" that "may indicate a link connecting the defendant to the knowing possession of contraband." *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016). Those factors are: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether

the conduct of the defendant indicated a consciousness of guilt. *Id.* (quoting *Evans*, 202 S.W.3d at 162 n.12). "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see also Robinson*, 174 S.W.3d at 326 ("[T]he number of factors actually supported by the evidence is not as important as the 'logical force' they collectively create to prove that a crime has been committed."). While the factors are intended to guide the court's analysis, the ultimate inquiry is whether, "[b]ased on the combined and cumulative force of the evidence and any reasonable inferences therefrom," the jury was "rationally justified in finding guilt beyond a reasonable doubt." *Tate*, S.W.3d at 415 (citing *Jackson*, 443 U.S. at 318–19).

Barnes contends that Woodard drove his truck to pick him up from the hospital and alleges that she should be solely responsible for the contents of the truck including the backpack. The record reflects that Barnes was driving his truck when the search was conducted, and the State need not prove that Barnes had sole possession of the contraband. *Robinson*, 174 S.W.3d at 325 (stating more than one person may have control of contraband). Although Barnes identifies types of affirmative links on which the State presented no evidence, as well as evidence that weighs in his favor, "[i]t is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *See Evans*, 202 S.W.3d at 166.

Reviewing the record, the direct and circumstantial evidence establishes that Barnes knowingly possessed the methamphetamine. Barnes was present when the methamphetamine was recovered from the backpack in his truck. He also owned and possessed the truck. Even though the methamphetamine was found in the rear passenger area, Barnes, as driver of the truck, was near the drugs. Before discovering the backpack, Officer Danesi found a significant amount of methamphetamine in Barnes's pocket. Barnes "freaked out" when he realized the officer had found methamphetamine in his shorts. Barnes claimed that he had just put the shorts on, implying he did not know the methamphetamine was in the pocket, and that he had just come from the hospital. The methamphetamine found in Barnes's pocket was packaged similarly to the large amount of methamphetamine found in the backpack.

Officer Danesi recovered other drug paraphernalia from the truck, including a bottle of fake urine from the driver's side area and a broken pipe under the passenger seat. He also found a digital scale with drug residue on it in the backpack. When patting Barnes down, Officer Danesi found a large amount of cash in Barnes's pocket. *See Tate*, 500 S.W.3d at 414 (identifying as affirmative links defendant's presence when search conducted, defendant's proximity to and accessibility of contraband, possession of other contraband or narcotics, incriminating statements and indicia of guilt, defendant's possession of large

11

amount of cash, whether drugs were found in enclosed space, and whether defendant owned or had right to possess place where drugs found).

Barnes cites to *Harris v. State*, in which the San Antonio court of appeals held that the evidence of affirmative links tying a defendant to a firearm inside a bag in a car was "nothing more than speculation." 532 S.W.3d 524, 531 (Tex. App.—San Antonio 2017, no pet.). The defendant was not the driver or owner of the vehicle where the firearm was found. *Id.* The bag was closed and found on the passenger side near the defendant's feet. The court reasoned that "nothing in the bag, on the bag, or in the vehicle" connected the defendant to the firearm. *Id.* We agree with the State that the facts in *Harris* are dissimilar to the facts here. Unlike in *Harris*, Barnes was the driver and owner of the truck, and he did not remain calm when confronted. Barnes had the same drugs in similar packaging in his pocket and in larger quantity in the backpack. Barnes had a large amount of cash, and the backpack bore a logo of an oil services company, the same industry Barnes told the officer he worked in. The officer also found fake urine in the driver's side door. To the extent that Barnes argues that the absence of some affirmative links or evidence, such as DNA evidence, proves his innocence, the "absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State*, 264 S.W.3d 215, 219 (Tex. App.— Houston [1st Dist.] 2008, pet. ref'd). The number of factors present is not as

important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband. *See Evans*, 202 S.W.3d at 162.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that Barnes knowingly or intentionally possessed the methamphetamine. We hold that the evidence is legally sufficient to support the conviction.

We overrule Barnes's first issue.

**Admissibility of Evidence**

In his second and third issues, Barnes contends that the trial court abused its discretion by admitting two pieces of evidence because they were hearsay and because they were substantially more prejudicial than probative.

**A.     Standard of Review**

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, and we will not reverse if it is within the zone of reasonable disagreement. *McDonnell v. State*, 674 S.W.3d 694, 701 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)).

**B.    Relevant Facts**

Barnes argues that the trial court abused its discretion by admitting State's exhibits 6 and 7 because they were unfairly prejudicial and because they were hearsay. The exhibits showed information found as the result of online searches conducted by an investigator with the Galveston County Criminal District Attorney's office. The investigator testified that she used two databases to investigate Barnes's employment history. The investigator testified that she was qualified to access the databases and that they were reliable. The trial court admitted the exhibits into evidence over Barnes's hearsay objection.

Exhibit 6 was obtained from the Texas Department of Public Safety's Intelligence and Counterterrorism Division and Exhibit 7 was obtained from Thomson Reuters's CLEAR database. Exhibit 6 showed that from 2016 to 2022, Barnes received wages from "S B Engineers & Construction Ltd," as well as several other companies. Exhibit 7 showed email addresses, addresses, phone numbers, and social media profiles associated with Barnes's full name and date of birth. One of the email addresses included the domain name "sbec.com."

The investigator testified that based on a search using Barnes's Social Security number, name, and date of birth, Exhibit 6 showed Barnes' employment history. The investigator testified that her investigation showed that S.B.

14

Management was one of Barnes's last employers. The investigator then testified that S.B. or S.B.E.C. was an "engineering chemical plant."

The investigator explained that Exhibit 7 showed email addresses and phone numbers that have been used by someone with Barnes's full name and date of birth. She testified that results in Exhibit 7 showed that Barnes had an email address with the S.B.E.C.'s domain name or email protocol.

## C. Analysis

### 1. Relevance under Rule 403

Barnes first argues that the exhibits should have been excluded because they were unfairly prejudicial. *See* TEX. R. EVID. 403 (excluding relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice). He focuses this argument on the fact that the data collected from Barnes's employment history came from information from the Texas Department of Public Safety's Intelligence and Counterterrorism Division. The Division's name is listed at the top of the exhibit. Barnes argues that the evidence caused the jurors to convict him because they thought he was a spy or terrorist, rather than because they believed that he possessed and knew about the methamphetamine in the backpack. The State responds that Barnes did not properly preserve this argument because his objection in the trial court did not fully inform the trial court that he was objecting under Rule 403.

Assuming without deciding that Barnes preserved his Rule 403 challenge, the trial court did not abuse its discretion in admitting the evidence under Rule 403. Generally, all relevant evidence is admissible. *See* TEX. R. EVID. 402. Evidence need not by itself prove or disprove a particular fact to be relevant. *Ex parte Smith*, 309 S.W.3d 53, 61 (Tex. Crim. App. 2010); *see also Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger unfair prejudice, confusion of the issues, tendency to mislead the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. The trial court is best situated to determine whether the evidence should be admitted or excluded. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). The balance between probative value and the potential for prejudice "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Unless the trial court's determination is so clearly wrong as to lie outside the zone within which reasonable persons might disagree, we must uphold its ruling. *Id.* at 343–44.

16

The exhibits strengthened the proof that Barnes possessed the methamphetamine because they linked him to the company's logo on the backpack. This proof also rebutted the defense's theory that the backpack and methamphetamine belonged to Woodard.

The exhibits have little tendency to suggest a decision on an improper basis or to confuse or distract the jury. Barnes argues that the jury would give undue weight to the exhibits because the data from one of them comes from the Texas Department of Public Safety's Division for Intelligence and Counterterrorism and give undue weight to the evidence because the jury believed he was a terrorist. We agree with the State that the name of the DPS division had little chance of swaying the jury to believe that Barnes was a terrorist, or that if they so believed, that fact would unduly influence them to believe that Barnes possessed the backpack of methamphetamine. The State never mentioned the words "intelligence" or "terrorism" in closing argument. The only mention of the name of the DPS division came from the investigator, and she did not emphasize it. Finally, the investigator's testimony was brief, and the two exhibits were only a few pages. This evidence did not take an inordinate time to present.

We cannot say that, in light of weighing all the factors, the admission of this evidence was unfairly prejudicial to Barnes. The trial court did not abuse its discretion by admitting State's Exhibits 6 and 7 over Barnes's Rule 403 objection.

17

## 2. Hearsay

Barnes next contends that both exhibits were inadmissible hearsay. The State responds that the exhibits met the hearsay exception for public records. *See* TEX. R. EVID. 803(8) (making exception to hearsay rule for factual findings from legally authorized investigation when opponent fails to demonstrate that source of information lacks trustworthiness). Even if the trial court had admitted these exhibits incorrectly, Barnes cannot prevail on this issue because the record does not show any harm to Barnes's substantial rights under Rule of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b) ("Any [nonconstitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Kibble v. State*, 340 S.W.3d 14, 20 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kibble*, 340 S.W.3d at 20 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We must examine whether the evidence had significant potential "to lure the factfinder into declaring guilt on a ground

different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021).

The exhibits played a minor role supporting the conviction. By the time the investigator testified about the exhibits, the jurors had heard significant evidence supporting Barnes's guilt. The evidence reflected that he was the owner and driver of the truck where the methamphetamine was recovered. He had a significant amount of methamphetamine in his pocket, and a larger amount in the backpack in the truck. He "freaked out" when the officer found methamphetamine in his pocket. The methamphetamine in the backpack was divided into bags, suggesting it was for sale, and the bags were similar to the bag of methamphetamine in Barnes's pocket. There was a scale in the backpack. Police recovered a bottle of fake urine from the driver's side door of the truck. The logo on the backpack was for a company in the industry that Barnes told the responding officer he worked.

The State did not emphasize the exhibits or Barnes's employment history. In closing argument, the State mentioned the records once when urging the jury that

the defense's theory that the backpack belonged to Woodard was farfetched. Arguing the jury should consider reasonable inferences from the evidence, the State said, "You mean the drugs that were found in a backpack that has [Barnes's] last known employer, according to his records on it, in the back of his truck that he was driving, that he admits is his, when he's got methamphetamine in his pocket, when he's got fake urine right next to him in his front door, we are supposed to believe that she's the drug dealer?"

The jury heard ample evidence to demonstrate that Barnes had possession of considerable methamphetamine intended for sale. Even assuming the two complained-of exhibits were erroneously admitted, we have fair assurance that the exhibits did not influence the jury or had but a slight effect. *Solomon*, 49 S.W.3d at 365. The error did not affect Barnes's substantial rights. *See* TEX. R. APP. P. 44.2(b). We overrule Barnes's issues related to the admission of State's Exhibits 6 and 7.

## Conclusion

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).